Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Laura Iris Mattes (Cal. Bar. No. 310594)
imattes@outtengolden.com
Adam Koshkin (Cal. Bar. No. 320152)
akoshkin@outtengolden.com
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Katharine Chao (Cal. Bar No. 247571)
kathy@osclegal.com
Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert St., Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 658-7758

Rachel Bien (Cal. Bar No. 315886)
rmb@outtengolden.com
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| D. BRUNNER, JR., | Case No. |
| Plaintiff | **CLASS ACTION** |
| v. | **COMPLAINT FOR FEDERAL AND STATE EMPLOYMENT LAW VIOLATIONS;** |
| LYFT, INC., | **CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF;** |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff Donald Brunner, Jr. ("Plaintiff"), by and through his undersigned attorneys, alleges, on behalf of himself and all those similarly situated, as follows:

### SUMMARY OF CLAIMS

1. Plaintiff is a driver for Defendant Lyft, Inc. ("Lyft" or "Defendant"). He brings this action as a class action on behalf of himself and all other current and former Lyft drivers in California, to recover lost wages, reimbursement of expenses, and other relief resulting from Lyft's willful decision to misclassify him and other drivers as independent contractors.

2. Plaintiff alleges that Lyft has violated and continues to violate the Fair Labor Standards Act ("FLSA"), the California Labor Code, the California Industrial Welfare Commission's Wage Order 9-2001 ("Wage Orders"), and California's Unfair Competition Law ("UCL"), which protect Plaintiff and other drivers from being misclassified. These violations include the failure to: (1) reimburse Plaintiff for his expenses, (2) pay overtime, (3) pay minimum wage, (4) provide itemized wage statements, and (5) keep accurate payroll records.

3. Plaintiff brings his claims under the California Labor Code, Wage Order, and the UCL, on behalf of all Lyft drivers who worked in California between July 2, 2016 through the date final disposition of this action (the "Class").

4. Plaintiff also brings claims under the FLSA, 29 U.S.C. §§ 201 *et seq*. and 29 U.S.C. § 216(b) on behalf of all Lyft drivers who worked in California between the period beginning 3 years prior to the filing of this action through the date of its final disposition (the "Collective").

5. Like all Lyft drivers, Plaintiff was required to consent to Lyft's Terms of Service ("TOS") when he signed up to become a Lyft driver. And like the vast majority of Lyft drivers, Plaintiff did not opt out of the arbitration clause contained in Section 17 of the TOS.

6. However, after bringing an individual arbitration claim with the American Arbitration Association ("AAA") to litigate his claims, Lyft failed to pay the fees necessary for Plaintiff's claims to proceed.

CLASS ACTION COMPLAINT FOR
FEDERAL & STATE EMPLOYMENT LAW VIOLATIONS

7.     Plaintiff therefore brings this action because Lyft has defaulted in arbitration and waived its right to proceed in that forum under the terms of Section 17 of the TOS.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this complaint alleges claims under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201 *et. seq.* and 29 U.S.C. § 216(b). This Court has jurisdiction over Plaintiff's claims under California law pursuant to 28 U.S.C. § 1367(a) because they arise from the same case or controversy as Plaintiff's federal claims, and both sets of claims share a common nucleus of operative fact.

9.     The United States District Court for the Northern District of California has personal jurisdiction over Defendant because Lyft's principal place of business is in this District and many of the acts complained of and giving rise to the claims alleged took place in California and in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c)(2) and Civil L.R. 3-2(d) because Defendant resides in San Francisco.

## RELATED CASES

11.     Plaintiff is aware of two related cases in this Court against Lyft: (1) *Whitson v. Lyft, Inc.*, No. 18-cv-06539-VC (N.D. Cal.); and (2) *Norton v. Lyft, Inc.*, No. 19-cv-02025-VC (N.D. Cal.). Those cases were also filed by Lyft drivers seeking unpaid wages due to Lyft's failure to properly classify them as employees. Whitson's and Norton's claims under the FLSA, California Labor Code, and Wage Order 9 are substantially similar to Plaintiff's here. Lyft is the defendant in these cases, and the question of whether Lyft misclassifies its drivers as independent contractors is central to each.

## THE PARTIES

12.     Plaintiff is a resident of Burbank, California. Plaintiff has worked as a Lyft Driver from approximately March 2016 to the present in the Los Angeles area. Plaintiff drove for Lyft 6-7 days per week, 7-10 hours per day, or a range of 42 to 70 hours per week.  Plaintiff typically

1   drives from around 6:00 PM until 3:00 AM.  To the best of his recollection, Plaintiff drove more

2   than forty hours per week for Lyft without overtime compensation during the weeks beginning

3   December 11, 2017 and December 18, 2017.  He estimates that he drives from 500 to 1,100 miles

4   a week for Lyft's benefit. Details regarding Plaintiff's precise hours, pay, and revenue generated

5   for Lyft are available by reference to Lyft's records.

6       13.     Defendant Lyft, Inc. is a publicly-traded (NASDAQ: LYFT) Delaware corporation

7   with its corporate headquarters and primary place of business in San Francisco, California, and

8   operations in at least 33 other states in the United States. Lyft has a market capitalization of

9   almost $17 billion. The practices described in this Complaint were designed at, emanated from,

10  and carried out by agents in Lyft's San Francisco, California headquarters.

11                              **LYFT'S DEFAULT OF ARBITRATION**

12      14.     Plaintiff's claims were originally brought in arbitration because Plaintiff was

13  subject to the arbitration agreement contained within Lyft's TOS. Plaintiff, represented by the

14  undersigned counsel, filed an arbitration demand with AAA on February 15, 2019 and notified

15  Lyft of his demand on the same day.

16      15.     On February 27, 2019, AAA sent an invoice to Plaintiff for filing fees.  Plaintiff

17  has paid the fees.

18      16.     On April 29, 2019, Plaintiff's counsel first contacted counsel for Lyft to begin the

19  process of identifying arbitrators for Plaintiff's arbitration. Hearing nothing, on May 2 and again

20  on May 6, 2019, Plaintiff followed up with Lyft's counsel regarding identifying arbitrators for

21  Plaintiff's arbitration.

22      17.     On May 7, 2019, still having heard nothing from Lyft, Plaintiff contacted AAA

23  about the assignment of arbitrators for Plaintiff's claim.

24      18.     On May 8, 2019, Lyft finally responded via email to AAA and Plaintiff regarding

25  the process of selecting an arbitrator.

26

27

28

19.     On May 13, 2019, Plaintiff provided a list of possible arbitrators to Lyft. Lyft provided a list of arbitrators on May 16, 2019. On May 23, 2019 Plaintiff and Lyft selected the arbitrators.[1] On May 31, 2019, Plaintiff provided the list of arbitrators to AAA.

20.     Having heard nothing from AAA about appointment from the parties' selected list of arbitrators, on June 10, 2019 Plaintiff requested an update from AAA about the status of Plaintiff's arbitration. Nine days later, on June 19, 2019 - **four months** after Plaintiff gave notice of his arbitration demand to Lyft and AAA – AAA notified Plaintiff that Lyft had not paid the required fees for Plaintiff's arbitration.

21.     On June 25, 2019, Lyft requested, via email, an opportunity to discuss the unpaid invoice with AAA. On June 28, 2019, Plaintiff asked AAA for an update, but on July 8, 2019, AAA notified Plaintiff that Lyft had still not paid the fees necessary for Claimant's arbitration to proceed.  Plaintiff's arbitration cannot proceed until Lyft pays its fees.

22.     As of the date of the filing of this Complaint, Lyft has still refused to pay the fees necessary for Plaintiff's arbitration to proceed. Plaintiff therefore withdrew his arbitration claim without prejudice and filed the instant action. Plaintiff's claims were tolled during the period starting when he filed his arbitration demand and ending when he withdrew it.  *See Fanucci v. Allstate Ins. Co*., 638 F. Supp. 2d 1125, 1137-38 (N.D. Cal. 2009).

23.     Lyft's actions are inconsistent with an intent to arbitrate Plaintiff's claims. Lyft has failed to pay necessary fees for Plaintiff to pursue his claims in arbitration (which its own TOS require).  Lyft has failed to remit these required payments to AAA in spite of numerous requests from Plaintiff and the passage of six months since Plaintiff filed his arbitration demand. As such, Lyft has defaulted in arbitration, waived its right to compel Plaintiff to proceed in that forum, and therefore Plaintiff may proceed in this Court. *Sink v. Aden Enterprises, Inc*., 352 F.3d 1197 (9th Cir. 2003).

---

[1] Per an agreement between Plaintiff's counsel and Lyft, Plaintiff's arbitration was to be grouped with the arbitrations of numerous other drivers (also represented by Plaintiff's counsel) and assigned, in groups, to an agreed set of arbitrators with each arbitrator presiding over a grouping of arbitrations.

# FACTUAL BACKGROUND

### A.      Plaintiff Is An Employee of Lyft Under the FLSA and California Law.

24.      Lyft is an App-based transportation provider that has been based in San Francisco, California since 2012. In March 2019, Lyft's shares were offered to the public and now trade on the NASDAQ stock exchange.

25.      **Lyft's business.** Lyft provides riders with transportation by assigning Lyft drivers to riders using a mobile phone application (the "Lyft App").

26.      The driver then transports the rider, and the rider pays Lyft for the service with a credit card via the Lyft App.

27.      Lyft sets the fare to be paid by the rider and communicates it to the rider via the App.

28.      On information and belief, Lyft pays the driver a percentage of the ride fare plus 100% of any added tip, with Lyft keeping the rest of the fare for itself.

29.      The work that Lyft drivers perform is in the usual course of Lyft's business – indeed, providing driving services *is* Lyft's business.

30.      Lyft says that it "is one of the largest and fastest growing multimodal transportation networks in the United States." *See* Lyft, Inc., Securities and Exchange Commission Form S-1 Registration Statement,[2] at p. 1 (March 1, 2019) ("S-1 Statement").

31.      Lyft drivers, including Plaintiff, provide the service that Lyft sells to the public.

32.      Lyft says that it participates in the "transportation . . . market," and describes its business as "singularly focused on revolutionizing transportation." S-1 Statement at pp. 3-4.

33.      Lyft earns money by providing its customers with a ride from point A to point B – a service that is wholly dependent on Lyft drivers, like Plaintiff.

34.      Lyft's "business depends largely on [its] ability to cost-effectively attract and retain qualified drivers[.]" S-1 Statement at p. 10.

---

[2] *Available at*:
https://www.sec.gov/Archives/edgar/data/1759509/000119312519059849/d633517ds1.htm (last visited Apr. 15, 2019).

35.     Lyft is not merely a platform or uninterested bystander between drivers and riders. As this Court has found, "Lyft concerns itself with far more than simply connecting random users of its platform. It markets itself to customers as an on-demand ride service, and it actively seeks out those customers. It gives drivers detailed instructions about how to conduct themselves. Notably, Lyft's own drivers' guide and FAQs state that drivers are 'driving for Lyft.'" *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1078 (N.D. Cal. 2015).

36.     As part of Lyft's requirements, Plaintiff received training in how to interact with riders, as well as Lyft's expectations and practices.

37.     Lyft also screens every driver, including Plaintiff, "before they are permitted to drive on [its] platform, starting with professional third-party background and driving record checks." *See* S-1 Statement at p. 148.

38.     Lyft can terminate drivers' right to provide driving services for violating one or more of the rules that Lyft imposes by contract.

39.     **Plaintiff lacks business autonomy.** Plaintiff is not engaged in an independently established business.  Lyft requires riders to request rides and pay drivers through the Lyft App. Lyft tells drivers not to solicit riders' contact information and to reject riders' requests to drive them outside of the Lyft App. Plaintiff is dependent on Lyft to identify riders for him, he may not hire employees to assist him in providing services for Lyft, and he does not need to possess any particular or special skills other than those required to obtain a driver's license.

40.     By working for Lyft, Plaintiff has not independently made the decision to go into business for himself. Lyft has unilaterally determined that drivers are an independent contractors while precluding them from taking the usual steps toward promoting and establishing independent businesses, such as forming business relationships with Lyft customers or otherwise promoting their services to the public.

41.     Lyft also prohibits drivers from setting or in any way affecting the rates of pay for their own services. Lyft prohibits drivers from communicating with riders about future ride services.

42.     Lyft requires drivers to use their own car or rent a car to provide rides for Lyft. Lyft requires that the car is not more than 8-9 years old, and it must pass automotive inspections as dictated by Lyft. Lyft requires drivers, including Plaintiff, to "only provide Services using the vehicle that has been reported to, and approved by Lyft, and for which a photograph has been provided to Lyft." TOS ¶ 10(d).

43.     Lyft requires drivers to carry their own insurance, but Lyft also provides drivers with liability and uninsured/underinsured coverage while they are logged into the Lyft App and driving riders.

44.     Lyft is solely responsible for recording drivers' rides, including the time and distance for each ride, the ride fare and added Lyft fees, any tips, and for compiling drivers' rates of pay for each ride.

45.     **Lyft controls the terms of employment.** Lyft maintains uniform policies and terms of service with which all Lyft drivers, including Plaintiff, must comply. Once Plaintiff passed Lyft's initial requirements, he was able to work for Lyft for an indefinite period of time. However, Lyft may shut down Plaintiff's access to the Lyft App for myriad reasons, thus preventing him from obtaining and responding to ride requests.

46.     Plaintiff performs work for Lyft by logging into the Lyft App, making himself available for rides and visible to Lyft users, which benefits Lyft. While logged in, Plaintiff regularly receives ride assignment quickly, sometimes receiving a new ride before completing the existing ride. Plaintiff rarely waits more than 15 minutes between ending one ride and receiving a new ride assignment. On an average day, Plaintiff typically waits 3-5 minutes between completing one ride and accepting the next assignment. Once Plaintiff receives an assignment, Lyft allows him 15 seconds to accept the assignment.

47.     On information and belief, until the beginning of 2018, Lyft required that drivers accept at least 90% of ride assignments to avoid being terminated. Now, Lyft "use[s] acceptance rates to determine driver eligibility for certain features and help keep passenger wait times short." Lyft Help Center, "Acceptance Rate", available at https://help.lyft.com/hc/en-

1    us/articles/115013077708-Acceptance-rate (last accessed July 1, 2019). Lyft calculates drivers'

2    acceptance rates by adding the number of rides a driver completes to the number of rides

3    cancelled by the rider, and dividing that number by the total number of ride assignments shown to

4    the driver. Lyft explains that a driver's acceptance rate may decrease due to missed assignments,

5    such as when a driver lets the timer count down to zero, and by driver cancellations. Lyft drivers

6    are under pressure to keep their acceptance rates high because Lyft bases eligibility for certain

7    bonuses, awards, and other benefits in part on a driver's overall acceptance rate, such as the

8    weekly "power drive bonus" – a weekly cash bonus given to drivers for completing a certain

9    number of rides. Ridester, "An Introduction to the Lyft Power Driver Bonus", available at

10   https://www.ridester.com/lyft-power-driver-bonus/ (last accessed July 1, 2019).

11       48.    Lyft's manner of assigning rides – including the frequency of ride assignment

12   messages, the very short window within which a driver can accept rides, and the threat of

13   termination for failure to accept the vast majority of rides – prevents Plaintiff from engaging in

14   personal activities while logged into the Lyft app.

15       49.    Plaintiff logs out of the Lyft App at all times when he is not engaged in providing

16   a ride for Lyft or making himself available for the next ride. When performing other types of

17   work for Lyft, Plaintiff typically logs out of the App. For example, Plaintiff typically logs out

18   when he pumps gas, performs vehicle maintenance and repairs, or uses the restroom. He

19   schedules his work and personal activities to minimize the risk of missing ride assignments.

20       50.    Lyft recognizes that drivers' time while logged into the App is not their own.

21   Specifically, Lyft advises drivers to log out and take a break if they do not plan to accept ride

22   assignments: "If you can't or don't want to accept ride requests, we recommend taking a break."

23   *Id.*

24       **B.    Lyft's Misclassification of Drivers Violates the FLSA and California Law.**

25       51.    Overtime and minimum wage. Lyft does not pay Plaintiff and drivers overtime for

26   hours worked over eight in a day or over 40 in a week. Furthermore, although Lyft suffers or

27   permits Plaintiff and drivers to log on to the Lyft App and make himself available to pick up

28

rides, Lyft fails to pay them while they are logged on but not providing a ride. In this way, Lyft fails to pay the minimum wage for all hours actually worked and instead limits his drivers' to a piece rate for each ride. Even limiting the calculation of minimum wage to the hours Plaintiff is engaged in providing a ride, Lyft fails to pay him a minimum wage for all hours worked.

52.     <u>Expense reimbursement.</u> Plaintiff's and drivers' necessary expenses incurred as a direct consequence of the discharge of their duties for Lyft include mileage costs; car insurance; cell phone service to perform driving services, receive driving requests, and maintain required email and/or text message contact with Lyft; and car cleaning and repair to comply with Lyft requirements, among other expenses. Lyft does not reimburse Plaintiff and drivers for work-related expenses.

53.     <u>Wage statements and time records.</u> Lyft's wage statements do not clearly itemize earnings in such a way that Plaintiff and drivers can readily identify whether they received all pay for which they are eligible under the law, such as hours worked, overtime, and minimum wages. Payroll records similarly fail to track all pay accurately.

54.     <u>Willfulness.</u> Lyft has continued to classify Plaintiff and drivers as independent contractors notwithstanding that its classification policy has been the subject of several lawsuits, including this Court's determination that a jury could reasonably find that Lyft drivers are employees under California law under the more stringent pre-*Dynamex* standard. It has also not changed its policy despite the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court*, 4 Cal.5th 903 (2018). Lyft's refusal to reclassify Plaintiff and its drivers as employees despite the clear legal standard showing that they are employees is knowing and voluntary and constitutes willful misclassification.

## **COLLECTIVE ACTION ALLEGATIONS**

55.     Plaintiff brings his FLSA Claim for Relief on behalf of himself and all Collective members, defined above.

56.     Lyft is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the Collective.  The FLSA claim in this lawsuit should be adjudicated as a collective action.  Upon information and belief, there are many similarly situated current and former Lyft drivers who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it.  Those similarly situated drivers are known to Lyft, are readily identifiable, and can be located through Lyft's records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings his claims on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

58.     The Class is defined as "All individuals who provided rides in California as Lyft drivers using the Lyft App from July 2, 2016 through the date of judgment in this action."

59.     Numerosity.  The Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that during the class period Lyft has employed thousands of persons who satisfy the definition of the Class.

60.     Ascertainability. The identity of Class members is ascertainable through Lyft's records or by public notice.

61.     Commonality and Predominance.  Common questions of law and fact exist as to members of the Class that predominate over any individualized questions, including the following:

- Whether Lyft drivers are employees or independent contractors;
- Whether Lyft failed to reimburse Lyft drivers for work-related expenses;
- Whether Lyft failed to pay Lyft drivers overtime;
- Whether Lyft failed to pay Lyft drivers the minimum wage for all hours worked;
- Whether Lyft failed to provide itemized wage statements;
- Whether Lyft kept accurate payroll records;
- Whether Lyft failed to provide meal and rest breaks;
- Whether Lyft's policies and practices violated the UCL, California Labor Code §§ 218.5, 218.6, 226, 226.3, 226.7, 226.8, 510, 512, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2802, 2810.5,

and California Industrial Welfare Commission Wage Order No. 9-2001 ("Wage Order 9");

- Whether Lyft's classification of Lyft drivers as independent contractors was willful; and

- The proper measure of damages sustained by members of the Class.

62.     <u>Typicality.</u> Plaintiff's claims are typical of Class members' claims. Plaintiff, like other Class members, was subjected to Lyft's policies and practices that violated the FLSA and California law. Plaintiff's job duties and claims were and are typical of those of the Class members.

63.     <u>Adequacy.</u> Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's counsel are experienced in employment class actions and will fairly and adequately represent and protect the interests of the Class members.

64.     <u>Superiority.</u> Class treatment would benefit the courts and Class members. Certification of the class would provide substantial benefits to the courts and Class members. The damages suffered by individual Class members are relatively small compared to the significant expense and burden of individual prosecution of this litigation. In addition, class certification will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Lyft's practices.

**<u>FIRST CLAIM FOR RELIEF</u>**
**<u>(Minimum Wage Claim, 29 U.S.C. § 206</u>**
**<u>Brought by Plaintiff on Behalf of Himself and the Collective)</u>**

65.     Plaintiff, on behalf of himself and all members of the Collective, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

66.     At all relevant times, Lyft has been an employer and Plaintiff and the Collective have been employees under California and Federal law entitled to the protections of the FLSA, the California Labor Code, and Wage Order 9.

67.     The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 206, which protects Plaintiff's and the Collective's right to earn a minimum wage and provides for damages and punishment for violations of that right.

68.     In particular, the applicable minimum wage was $10.00 to $13.00 an hour, Plaintiff and the Collective regularly earned less than the minimum due to the significant deductions from pay that Lyft made for gasoline, car insurance, car financing, cleaning and maintenance, and cell phone usage, as well as the other expenses noted in above. These expenses resulted in hourly rates of well less than the minimum wage based on the hours that Plaintiff and the Collective worked.

69.     Although Plaintiff and the Collective periodically did not earn at least the minimum wage, Lyft had a policy and practice of failing and refusing to pay them minimum wages for all hours worked and thus violated and continue to violate the above-referenced minimum wage protections.

70.     Plaintiff seeks the amount of the respective unpaid wages owed him and the Collective, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 *et seq*.and such other legal and equitable relief as the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(Overtime Claim, 29 U.S.C. § 207**
**Brought by Plaintiff on Behalf of Himself and the Collective)**

71.     Plaintiff, on behalf of himself and all members of the Collective, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

72.     The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 207, which requires overtime pay for time worked over 40 hours in a week.

73.     Although Plaintiff periodically worked more than 40 hours in a week, including during the weeks beginning December 11, 2017 and December 18, 2017, Lyft had a policy and practice of failing and refusing to pay him and similarly situated drivers overtime and thus violated and continues to violate the above-referenced overtime provisions of the FLSA.

74.     Plaintiff seeks the amount of the respective unpaid wages owed him and the Collective, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 et seq.and such other legal and equitable relief as the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**(Minimum Wage Claim, Cal. Labor Code §§ 1182.12,**
**1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9**
**Brought by Plaintiff on Behalf of Himself and the Class)**

75.    Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

76.    The foregoing conduct, as alleged, also constitutes a violation of the California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9, which similarly protect Plaintiff's  and Class members' right to earn a minimum wage and provide for damages and punishment for violations of that right.

77.    Although the applicable minimum wage in California was $10 to $13 between 2016 and 2019, Plaintiff and Class members regularly earned less than the minimum due to the significant deductions from pay that Lyft made for gasoline, car insurance, car financing, cleaning and maintenance, and cell phone usage, as well as the other expenses noted above. These expenses resulted in hourly rates of well less than $10-$13 based on the hours that Plaintiff and Class members worked.

78.    Although Plaintiff and Class members periodically did not earn at least the minimum wage, Lyft had a policy and practice of failing and refusing to pay them minimum wage for all hours worked and thus violated and continues to violate the above-referenced minimum wage protections.

79.    Plaintiff seeks the amount of the respective unpaid wages owed him and other Class members, liquidated damages, attorneys' fees and costs pursuant to Cal. Labor Code § 1194 and Wage Order 9, and such other legal and equitable relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(Overtime Claim, Cal. Labor Code §§ 510, 1194, 1198, and Wage Order 9**
**Brought by Plaintiff on Behalf of Himself and the Class)**

80.    Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

- 13 -

81.     The foregoing conduct, as alleged, constitutes a violation of California Labor Code §§ 510, 1194, 1198, and Wage Order 9, which require overtime pay for time worked over eight hours in a day or over 40 hours in a week.

82.     Although Plaintiff and Class members periodically worked more than eight hours in a day or 40 hours in a week, Lyft had a policy and practice of failing and refusing to pay him and Class members overtime and thus violated and continues to violate the above-referenced overtime provisions of the California Labor Code and Wage Order 9.

83.     Plaintiff seeks the amount of the respective unpaid wages owed him and Class members, liquidated damages, attorneys' fees and costs pursuant to Cal. Labor Code § 1194 and Wage Order 9, and such other legal and equitable relief as the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**(Failure to Reimburse Necessary Expenses, Cal. Labor**
**Code § 2802 and Wage Order 9**
**Brought by Plaintiff on Behalf of Himself and the Class)**

84.     Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

85.     The foregoing conduct, as alleged, constitutes a violation of California Labor Code § 2802 and Wage Order 9, which provides for the reimbursement of employee expenses incurred while carrying out their employment or to comply with employer requirements.

86.     Plaintiff and Class members have incurred and continue to incur expenses necessary for driving for Lyft that include mileage costs; car insurance; cell phone service to perform his driving duties, receive driving requests, and maintain required email and/or text message contact with Lyft; and car cleaning and repair to comply with Lyft requirements, among other expenses.

87.     Lyft failed to reimburse Plaintiff and Class members for all work-related expenses and thus violated and continues to violate Labor Code § 2802 and Wage Order 9.

88.     Plaintiff seeks the amount of unpaid expenses owed him and Class members, interest, attorneys' fees and costs pursuant to Labor Code § 2802(b) and (c) and Wage Order 9, and such other legal and equitable relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF
### (Wage Statement Claim, Cal. Labor Code § 226, and Wage Order 9
### Brought by Plaintiff on Behalf of Himself and the Class)

89.     Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

90.     The foregoing conduct, as alleged, constitutes a violation of California Labor Code § 226 and Wage Order 9, which provides requirements for properly itemized wage statements.

91.     The wage statements Lyft provided to Plaintiff and Class members do not clearly itemize hours worked, an hourly wage, overtime, or earnings in a way that readily identifies whether Plaintiff and Class members received all applicable pay for which they were eligible. Lyft thus violated and continues to violate California Labor Code § 226 and Wage Order 9.

92.     Plaintiff seeks to recover, on behalf of himself and Class members, the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), as well as costs and attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (Meal and Rest Break Claim, Cal. Labor Code §§ 226.7, 512, and Wage Order 9,
### Brought by Plaintiff on Behalf of Himself and the Class)

93.     Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

94.     At all relevant times, Lyft has been an employer, and Plaintiff and Class members are employees under California law entitled to the protections of the California Labor Code.

95.     The foregoing conduct, as alleged, constitutes a violation of California Labor Code §§ 226.7, 512, and Wage Order 9, which provide for a 30-minute meal break for employees who work five hours or more in a day and for 10-minute breaks for every three and one-half hours worked.

96.     Although Plaintiff and an identifiable portion of Class members periodically worked four to five hours or more in a day, Lyft had a policy and practice of failing to provide lawful meal and rest breaks. Lyft thus violated and continues to violate the above-referenced meal and rest break provisions of the Labor Code.

97.     Pursuant to Lyft's policy of classifying Plaintiff and Class members as independent contractors, Lyft lacks a meal or rest break policy that complies with California law. In the absence of such policies, and because Lyft's policies and practices incentivize Plaintiff and Class members to work constantly, Plaintiff and Class members regularly work five or more hours in a day without taking an off-duty meal break and work more than three and one-half hours without taking an off-duty rest break. For example:

- Lyft queues up the next rider before the current rider is dropped off, therefore, Lyft drivers must cancel a rider request in order to log out for meal and rest breaks;

- Lyft penalizes Lyft drivers for declining rider requests by lowering their acceptance rate, which must be 90% or better. If a Lyft driver refuses too many rider requests, Lyft terminates the driver's employment;

- To be eligible for Lyft's Power Driver Bonus and other incentive payments, Lyft drivers must be online many hours a week (usually at least 50 per week), provide a certain number of rides, have an acceptance rate of 90% or higher, and/or remain online for long stretches during peak periods (usually for at least 50 minutes an hour). These policies discourage Lyft drivers from taking meal and rest breaks.

- In addition, because Lyft has cut its prices in order to compete with other rideshare companies, Lyft drivers must work much longer hours in order to make a living. This circumstance also strongly discourages Lyft drivers from taking meal and rest breaks.

98.     Plaintiff, on behalf of himself and Class members, seeks the amount of the respective pay owed – one hour of compensation for each workday that the meal or rest period is not provided – interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**EIGHTH CLAIM FOR RELIEF**
**(Unfair Business Practices, Cal. Bus. & Prof. Code § 17200**
**Brought by Plaintiff on Behalf of Himself and the Class)**

99.     Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

100.     California Labor Code § 226.8 makes it unlawful for employers to willfully misclassify workers as independent contractors, and to charge an individual who has been willfully misclassified as an independent contractor a fee, or make any deductions from compensation, for any purpose including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described would have violated the law if the individual had not been misclassified.

101.     California Labor Code § 2802 and Wage Order 9 provide for the reimbursement of Plaintiff's and Class members' expenses incurred while carrying out their employment or to comply with Lyft requirements.

102.     California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, 1199, and Wage Order 9 protect Plaintiff's right to earn the minimum wage and provide for damages and punishment for violations of that right.

103.     California Labor Code §§ 510, 1194, 1198, and Wage Order 9 provide for compensation with overtime pay for time worked over eight hours in a day or 40 hours in a week.

104.     California Labor Code §§ 226, 353, 1174 and Wage Order 9 provide requirements for properly itemized wage statements and payroll recordkeeping.

105.     California Labor Code § 2810.5 requires employers to provide written notice at the time of hire containing the rate or rates of pay, including overtime rate, the basis for pay (whether by the hour, piece, etc.), as well as other information.

106.     California Labor Code § 432 requires employers to provide employees and applicants, "upon request," with "a copy of . . . any instrument relating to the obtaining or holding of employment that" that he or she has "sign[ed]." In addition, California Labor Code § 1198.5

- 17 -

provides "[e]very current and former employee[] or his or her representative . . . the right to inspect and receive a copy of the personnel records that the employer maintains relating to the employee's performance or to any grievance concerning the employee." That statute provides procedural protections for employees relating to how and when employees must be allowed to inspect or receive copies of such records, and it provides for injunctive relief and a penalty of $750 payable to the employee.

107.    On information and belief, Lyft has a pattern, practice, and/or policy of failing to provide employee-specific documents and information, including details regarding whether they are subject to Lyft's arbitration clause, within a reasonable time and in a manner that complies with the law.

108.    Lyft's conduct, as alleged, violates the UCL, which prohibits, *inter alia*, unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

109.    By failing to pay Plaintiff and Class members for work-related expenses, overtime, and minimum wage, and violating requirements for wage statements, notice, and payroll records, Lyft committed unlawful and unfair acts as defined by the UCL.

110.    Lyft's practices, as alleged, constitute unlawful acts because such acts violate the California Labor Code sections detailed above, as well as Wage Order 9.

111.    Lyft's practices, as alleged, also constitute unfair acts because such acts are contrary to public policy.

112.    As a result of these unlawful and/or unfair business practices, Lyft reaped unfair benefits and illegal profits at Plaintiff's and Class members' expense. Lyft must disgorge these ill-gotten gains and restore to Plaintiff and Class members all expense reimbursement, overtime, minimum wages, and other wages owed. Lyft's actions deprived Plaintiff and Class members of their expenses and full pay; consequently, Plaintiff and Class members have lost money and property, and they are entitled to restitution in the amount of expenses and pay that Lyft withheld. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff is entitled to payment of his attorneys' fees, costs, and expenses incurred in bringing this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

A.     Certification of the Class;

B.     Issuance of Court-approved notice to the Collective so that members are advised
of the lawsuit and have the opportunity to join it;

C.     Designation of Plaintiff as Representative of the Class;

D.     Designation of Plaintiff's counsel of record as Class Counsel for the Class;

E.     A declaratory judgment that the practices complained of herein are unlawful;

F.     An injunction against Lyft and its officers, agents, successors, employees,
representatives, and any and all persons acting in concert with it, as provided by
law, from engaging in each of the unlawful practices, policies, and patterns set
forth herein;

G.     Statutory penalties;

H.     An award of damages and restitution to be paid by Lyft according to proof;

I.     Pre-judgment and post-judgment interest, as provided by law;

J.     Attorneys' fees, pursuant to the FLSA, Labor Code §§ 218.5, 226(e), 1194, 2802,
Code of Civil Procedure § 1021.5, and all other bases for fees in the Labor Code
and Wage Order 9;

K.     Costs of suit, including expert fees and costs;

L.     An appropriate service payment to Plaintiff for his service as Class representative;
and

M.     Such other injunctive and equitable relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to
which he has a right to jury trial.

| | |
|---|---|
| 1 | Dated: August 14, 2019 |

Respectfully submitted,

By: */s/ Christian Schreiber*
       Christian Schreiber

Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Laura Iris Mattes (Cal. Bar No. 310594)
imattes@outtengolden.com
Adam Koshkin (Cal. Bar No. 320152)
akoshkin@outtengolden.com
OUTTEN & GOLDEN LLP
One California St, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Rachel Bien (Cal. Bar No. 315886)
rmb@outtengolden.com
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058

Katharine Chao (Cal. Bar No. 247571)
kathy@osclegal.com
Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 658-7758

*Counsel for Plaintiff and the Proposed Class*

- 20 -