KEKER, VAN NEST & PETERS LLP
R. JAMES SLAUGHTER - # 192813
rslaughter@keker.com
JO W. GOLUB - # 246224
jgolub@keker.com
MORGAN E. SHARMA - # 313863
msharma@keker.com
JASON GEORGE - # 307707
jgeorge@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
LYFT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| D. BRUNNER, JR.,<br><br>      Plaintiff,<br><br>    v.<br><br>LYFT, INC.,<br><br>      Defendant. | Case No. 3:19-cv-04808<br><br>**DEFENDANT LYFT, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    November 14, 2019<br>Time:   10:00 a.m.<br>Judge:   Hon. Vince Chhabria<br>Room:   Courtroom 4 – 17th Floor<br><br>Date Filed: August 14, 2019<br><br>Trial Date: None set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 14, 2019, at 10:00 a.m., or as soon thereafter as this matter can be heard, in the courtroom of the Honorable Vince Chhabria, located in Courtroom 4, 17th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Lyft, Inc. will and hereby does move this Court to compel individual arbitration of Plaintiff Donald Brunner, Jr.'s claims and to dismiss this suit.

## Motion to Compel Individual Arbitration and Dismiss Claims

Defendant Lyft, Inc. ("Lyft") respectfully moves this Court to compel individual arbitration of Brunner's claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Brunner entered into an agreement with Lyft to arbitrate on an individual basis all claims and disputes with Lyft, including the claims asserted in this action. The Federal Arbitration Act mandates enforcement of Brunner's agreement to arbitrate. Lyft has not defaulted on or waived its right to compel arbitration of these claims. Additionally, Lyft moves to dismiss all claims.

This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the Declarations of Oluwabukunmi Ayanbule, Jeannie Lieu, and Candace Bertoldi, and the exhibits thereto; the pleadings, records, and other papers on file in this action; and any such further evidence or arguments as may be presented at or before the hearing.

Respectfully submitted,

Dated:  September 12, 2019                    KEKER, VAN NEST & PETERS LLP

By:   /s/ *Jo W. Golub*
R. JAMES SLAUGHTER
JO W. GOLUB
MORGAN SHARMA
JASON GEORGE

Attorneys for Defendant LYFT, INC.

# TABLE OF CONTENTS

**Page No.**

MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLAIMS...................1

I. INTRODUCTION ....................................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

    A. Brunner agreed to arbitrate his claims. ................................................................2

    B. OG files 107 arbitration demands which Lyft has vigorously defended in arbitration for nearly a year........................................................................................4

    C. The AAA Fees for Groups 3, 4, and 5 were not yet due at the time Brunner withdrew his claim over a $1,900 filing fee. ............................................................5

    D. Brunner suddenly, and without prior warning, withdraws his arbitration claims in an *ex parte* communication to the AAA..................................................7

III. ARGUMENT.................................................................................................................9

    A. Lyft has not waived its right to compel arbitration of Brunner's claims. ...............10

        1. Lyft has not acted inconsistently with its right to compel arbitration.............................................................................................................10

        2. Brunner has not and will not suffer prejudice by having his claims compelled back to arbitration......................................................13

    B. The arbitration agreement is valid and enforceable and requires Brunner to arbitrate his claims on an individual basis. ............................................................14

IV. CONCLUSION...........................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT&T Mobility v. Concepcion*
 563 U.S. 333 (2011) ................................................................................................... 15

*Brown v. Dillard's, Inc.*
 430 F.3d 1004 (9th Cir. 2005) ................................................................................... 10

*DIRECTV, Inc. v. Imburgia*
 136 S. Ct. 463 (2015) ................................................................................................. 15

*Epic Sys. Corp. v. Lewis*
 138 S. Ct. 1612 (2018) ............................................................................................... 15

*Frank v. Sirius XM Radio, Inc.*
 No. SACV 12-00415-CJC, 2012 WL 12897997 (C.D. Cal. July 25, 2012) ............. 12

*Freeman v. SmartPay Leasing, LLC*
 771 F. App'x 926 (11th Cir. 2019) ............................................................................ 10

*Green Tree Fin. Corp.-Ala. v. Randolph*
 531 U.S. 79 (2000) ..................................................................................................... 14

*Imagenetix, Inc. v. GNC Holdings, Inc.*
 No. 12-CV-89-H (RBB), 2013 WL 12114630 (S.D. Cal. Jan. 28, 2013) ............ 10, 12

*McLellan v. FitBit, Inc.*
 No. 3:16-cv-00036-JD, 2018 WL 3549042 (N.D. Cal. July 24, 2018) ...................... 14

*Newirth by and through Newirth v. Aegis Senior Cmtys., LLC*
 931 F.3d 935 (9th Cir. 2019) ............................................................................... 10, 11

*Pre-Paid Legal Servs. Inc. v. Cahill*
 786 F.3d 1287 (10th Cir. 2015) ........................................................................... 10, 12

*Richards v. Ernst & Young, LLP*
 744 F.3d 1072 (9th Cir. 2013) ................................................................................... 10

*Shearson/Am. Express, Inc. v. McMahon*
 482 U.S. 220 (1987) ................................................................................................... 14

*Sink v. Aden Enters, Inc.*
 352 F.3d 1197 (9th Cir. 2003) ....................................................................... 10, 12, 14

*Sovak v. Chugai Pharm. Co.*
    280 F.3d 1266 (9th Cir. 2002) ................................................................................................10

*Willick v. Napoli Bern Ripka & Assocs, LLP*
    No. CV 15-00652-AB (Ex), 2015 WL 12765469 (C.D. Cal. Aug. 20, 2015) .........................11

**Statutes**

Cal. Bus. & Prof. Code §17200 et seq. ............................................................................................2

FAA § 3 ..........................................................................................................................................10

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. .........................................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     **INTRODUCTION**

The claims brought by Plaintiff Donald Brunner, Jr. ("Brunner") are subject to mandatory binding arbitration pursuant to the parties' valid and enforceable arbitration agreement. His demand was one of over 100 arbitration demands filed against Lyft in the past 11 months by Plaintiff's counsel. All of these claimants' demands have been assigned to arbitrators, including Brunner's claims; and 24 of these claimants have arbitration hearings already scheduled to adjudicate their claims.

Lyft has actively engaged in defending these claims over the past 11 months. Moreover, Lyft and claimants' counsel have been in near-constant communication with the American Arbitration Association ("AAA"), the arbitrators, and each other about not only the claims that are in active phases of arbitration, but also the claims that are waiting to be scheduled for preliminary conferences. During this time, counsel for the parties and the AAA have exchanged hundreds of emails and participated in dozens of meet-and-confer calls, telephonic preliminary conferences, telephonic status conferences, and telephonic hearings while working to resolve these demands. Both parties have exchanged discovery, taken depositions, and filed extensive briefing.

Despite near constant communication about these claimants' demands, and without any forewarning, Plaintiff's counsel withdrew Brunner's arbitration demand in an *ex parte* communication to the AAA on which Lyft's counsel was not even copied. Plaintiff's counsel based this withdrawal on the false allegation that Lyft had "defaulted" in arbitration by not remitting a $1,900 filing fee. That allegation is based on a stilted recitation of the procedural history that is contrived by Brunner's counsel to achieve an end-run around the mandatory arbitration Brunner's claims.

The AAA has confirmed that the filing fee for Brunner's claim ***was not past due***. Importantly, the AAA noted that it was still "actively administrating groups 1 and 2" (earlier filed claims), "had not proceeded with administration on groups 3, 4, and 5," and "[t]hus, had not

circulated an invoice for Respondent's portion of the fees for group 3, which includes Mr. Brunner's claims." Indeed, the AAA expressly stated that it was waiting to re-circulate an invoice for the remaining fees for groups 3, 4, and 5, until after *Claimants* paid the initial filing fees for groups 4 and 5. Claimants paid those fees on August 16, 2019—two days *after* Brunner withdrew his arbitration demand and filed this suit. On August 21, 2019, the AAA emailed Lyft an invoice for the initial fees due for groups 3, 4, and 5, and Lyft promptly paid those fees.

Brunner concedes he is "subject to the arbitration agreement contained in Lyft's [Terms of Service]." Complaint, Dkt. 1 ("Compl."). ¶ 14. As detailed below, Lyft has cooperated fully in the arbitration process, and any delay in the delivery of arbitration fees payable to the AAA was the result of the AAA's procedures or simple miscommunication. Simply put, Brunner cannot meet his heavy burden to prove Lyft defaulted under the arbitration agreement or somehow waived its right to compel arbitration of Brunner's claims. The Court should therefore compel Brunner's claims back to arbitration pursuant to Lyft's mandatory arbitration agreement, and dismiss this action.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Lyft is a peer-to-peer ridesharing platform (the "Lyft Platform") that uses a mobile-phone application (the "Lyft App") to connect passengers who need rides with drivers who are willing to provide them. Brunner is a driver who uses the Lyft Platform to identify riders in need of rides within California. Brunner alleges that Lyft misclassified him as an independent contractor instead of as an employee and, as a result, failed to comply with the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"), various provisions of the California Labor Code, the California Industrial Welfare Commission's Wage Order 9-2001, and Cal. Bus. & Prof. Code §17200 et seq. ("UCL").

### A.   Brunner agreed to arbitrate his claims.

Brunner alleges that he has used the Lyft Platform to provide rides within California since March 2016. Compl. ¶ 12. Use of the Lyft Platform via the Lyft App is governed by the Terms of Service ("Terms"), which is a contract between Lyft and the driver. *See* Ayanbule

Decl. ¶ 6; Lieu Decl. Ex. A.  Agreeing to the Terms is, and always has been, a condition of using the Lyft Platform.  *See* Ayanbule Decl. ¶ 6; Lieu Decl. Ex. A.  Drivers consent to the Terms electronically through the Lyft App or website.  Ayanbule Decl. ¶ 5.  Lyft periodically updates the Terms.  *Id*. ¶ 7.  At all relevant times, those updates have been communicated to drivers, who were required to re-consent in order to continue offering rides through the Lyft App.  *Id*.

The February 6, 2018 Terms require individual arbitration of "ALL DISPUTES AND CLAIMS BETWEEN US," including "any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to: this Agreement and prior versions thereof . . . , the Lyft Platform, the Services . . . your relationship with Lyft, . . . any payments made or allegedly owed to you . . . any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, . . . ." Lieu Decl., Ex. A § 17(a).[1]  The Terms also provide that claims may be brought "ONLY IN AN INDIVIDUAL CAPACITY" and the "arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claims."  *Id.* § 17(b).  Finally, the arbitration provision provides driver and driver applicants with the ability to opt out of arbitration within 30 days of consenting to the Terms.  *Id.*, Ex. A § 17(j).

On May 16, 2018, Brunner consented to Lyft's February 6, 2018 Terms.[2]  Ayanbule Decl. ¶ 14 & Ex. A.  Brunner failed to opt out of the arbitration agreement within thirty days in accordance with the parties' agreement.  Lieu Decl. ¶ 7.  Thus, Brunner is bound by the

---

[1] Other provisions in the Terms specify that arbitrations will proceed under the American Arbitration Association's ("AAA") Consumer Arbitration Rules, although drivers may ask the arbitrator to use a different set of AAA rules.  Lieu Decl., Ex. A § 17(d).  Drivers are entitled to reasonable discovery and may seek "any individualized remedies that would be available in court."  *Id.* § 17(d).  In addition, the arbitrator may award drivers reasonable fees and costs under applicable law, while Lyft relinquishes any right to such fees and costs.  *Id.* § 17(e)(5)-(6).

[2] Lyft updated its Terms of Service on August 26, 2019.  Lieu Decl. ¶ 8.  However, Lyft has no record of Brunner ever having agreed to those Terms.  *See* Ayanbule Decl. Ex. A; Lieu Decl. ¶ 9.  On September 6, 2019, Brunner indicated that he wished to opt out of the arbitration provision in the August 26, 2019 Terms.  Lieu Decl. ¶¶ 10-11 & Exs. B-C.  However, he never consented to those terms, so he cannot properly opt out of them.

arbitration provision in the February 6, 2018 Terms.  Brunner concedes in his Complaint that his claims are subject to arbitration.  Compl. ¶ 14.

### B.     OG files 107 arbitration demands which Lyft has vigorously defended in arbitration for nearly a year.

Between October 31, 2018 and July 23, 2019, the law firms of Outten & Golden ("OG") and Olivier, Schreiber & Chao LLP ("OSC") (collectively, "Plaintiff's counsel") jointly filed five groups of arbitration demands against Lyft, seeking to have the claims arbitrated by the AAA, as required by Lyft's Terms.  Declaration of Candace Bertoldi ("Bertoldi Decl.") ¶ 5 & Exs. B-F (listing claimants in Groups 1-5).  Brunner's counsel brought these arbitration demands on behalf of 107 drivers who have used the Lyft platform to offer rides and now claim that they were misclassified as independent contractors.  *Id*. ¶ 5.  Brunner's claims were filed with Group 3, on or about February 15, 2019.  *Id*. ¶ 9 & Ex. D.

Over the past 11 months, Lyft has vigorously defended the claims filed by Plaintiff's counsel.  The Group 1 arbitrations are the farthest along and are set for arbitration hearings in November, January, and February.  *Id*. ¶¶ 20-97.  Almost all of the arbitrators assigned to Group 2 claimants have conducted or set preliminary conferences and half have set hearing dates for March and April 2020.  *See id*., Ex. A.  Claimants in Groups 3, 4, and 5 have been assigned to arbitrators after the parties exchanged multiple arbitrator lists.  *Id*. ¶¶ 9-11, 109-11, 119-20, 122, 126-27, 131-33, 137-39, Ex. A.  Prior to filing his Complaint, Brunner's claim was assigned a AAA case number, grouped with three other claimants, and assigned to an arbitrator in Los Angeles.  *Id*. ¶ 117, Ex. G.  Because the AAA was still in the process of scheduling preliminary conferences for Group 2, the AAA had not begun to administer the claims brought by Groups 3, 4 or 5.  *Id*. ¶¶ 147.  This meant that the AAA still needed to confirm arbitrator appointments, solicit arbitrator disclosures, assign case numbers to certain claims, and invoice the initial filing and/or initial case management fees for all three groups.  *Id*. ¶¶ 147-48.

Throughout 2019, Lyft and Plaintiffs' counsel have been in near-constant contact regarding administration of these arbitrations, including hundreds of email communications,

dozens of meet-and-confer calls, dozens of telephonic conferences and hearings with arbitrators, multiple disputes regarding the propriety of dispositive motions, the exchange of discovery, the deposition of both sides' witnesses, and a litany of other matters. *See generally id*. ¶¶ 14-140.  In addition, both parties' counsel are in near-constant communication with the AAA, regarding fee payments, conflicts issues, conference scheduling, and more. *See id*.

### C. The AAA Fees for Groups 3, 4, and 5 were not yet due at the time Brunner withdrew his claim over a $1,900 filing fee.

To date, Lyft has paid the AAA more than $203,300 in initial filing fees for cases filed by Plaintiff's counsel, and many thousands more in case management and arbitrator fees to defend the claims brought by Brunner's counsel. *Id*. ¶¶ 6.  This entire lawsuit rests solely on the nonpayment of case management fees for Brunner's claims, in the amount of $1,900.  Notably, those fees have since been paid along with all case management fees for Groups 3, 4, and 5, which became due *after* the AAA invoiced them on August 21, 2019. *Id*. ¶¶ 150.

On February 27, 2019, the AAA sent a litany of communications to Lyft related to the arbitrations, including 12 conflict or disclosure emails for three of the four arbitrators assigned to the group 1 claimants, as well as an invoice for Group 3. *Id*. ¶¶ 18-19, 38, 68, 101.  Lyft's counsel believed the invoice was then paid. *Id*. ¶ 102.  Over the next seven weeks, the parties reviewed conflict disclosures for the arbitrators assigned to Group 1 claimants; engaged in preliminary conferences for the Group 1 claimants; met and conferred regarding discovery schedules; submitted joint stipulations regarding discovery protocols and case management; and met and conferred regarding the selection of arbitrators for Groups 2 and 3, assignment of claimants to arbitrators, and sequencing of substantive issues. *Id*. ¶ 19-97, 103-04.

After learning that different AAA invoices were being sent to different points of contact (some to Lyft, some to Seyfarth Shaw, and some to Keker, Van Nest & Peters), Lyft's counsel contacted the AAA on April 16 and April 18, 2019, to discuss a process to implement whereby all future invoices for claims brought by Plaintiff's counsel would be sent to Seyfarth Shaw to ensure timely payment. *Id*. ¶ 105-06.  During that discussion, defense counsel asked the AAA to

also send her any and all invoices that were still due to ensure they were promptly paid. *Id.* The AAA did not send any invoices in response to the request. *Id.* After those calls, Lyft continued to defend the arbitrations aggressively, including engaging in letter briefing regarding motion practice, serving and responding to discovery, exchanging and selecting arbitrators for the claimants in Groups 2 and 3, and beginning arbitrator selection for Group 4. *Id.* ¶¶ 24-37, 44-67, 71-83, 84-97, 149.

Two months later, on June 14, 2019, Lyft's counsel received an email from the AAA with an invoice dated February 27, 2019 for fees associated with the claimants in Group 3. *Id.* ¶ 121. Lyft's counsel then called the AAA to ask why it did not send this invoice along in April, when Lyft had requested all outstanding invoices. *Id.* Counsel asked the AAA to confirm if the fees had actually been paid to ensure Lyft did not make duplicate payments and the AAA said it would investigate the matter further. *Id.*

Almost two weeks later, on June 25, 2019, Lyft's counsel received an email from the AAA indicating that the AAA was awaiting payment from Lyft in the amount of $43,700 in order to move forward with the arbitrations of the claimants in Group 3. *Id.* ¶ 123, Ex. I. That same day, Lyft's counsel again emailed and called the AAA in order to explain that, based on their June 14 phone call, she was still waiting for the AAA's confirmation that this balance was outstanding and that it had not in fact been paid. *Id.* ¶ 123 & Ex. J. The AAA acknowledged that it had not followed up on Lyft's counsel's request in April for all unpaid invoices in a timely manner and that he would prepare an updated invoice that would set forth a new date when the fees would be due. *Id.* ¶ 124. The AAA also discussed the fact that a new AAA administrator would soon be taking over as claims administrator for these arbitrations. *Id.*

Three days later, on June 28, 2019, Plaintiff's counsel contacted the AAA to inquire whether Lyft had paid the outstanding fees for Group 3, and the AAA responded: "**Yes we have received the fees** and applied payment to each of the cases. We will go ahead and proceed with inviting the arbitrators to serve." *Id.* ¶ 125, Ex. K (emphasis added). Meanwhile, Lyft's counsel and Plaintiff's counsel were meeting and conferring regarding arbitrators for Group 4—having

already agreed on arbitrators for Groups 2 and 3—and the parties emailed the AAA on July 2 regarding the agreed arbitrator assignments for Group 4. *Id*. ¶¶ 126-28. In response to this communication—just four days after the last one—the new AAA case administrator stated that fees for Group 3 were still outstanding. *Id*. In response to this confusing shift, Plaintiff's counsel asked, "I thought the fees had now all been paid," and the AAA responded, "I'm just sorting through all of the cases today so we are all on the same page. I will send out a more informative email once I've confirmed which cases are in which stage." *Id*., Ex. L. On July 8, the AAA administrator sent additional communications about fees, as well as sending the case numbers for the Group 4 claimants. Id. ¶ 129. Because the AAA had indicated it would send more information and an updated invoice, Lyft continued to wait. *Id*. ¶ 130.

On July 10, 15, and 26, the parties continued to communicate with the AAA regarding arbitrators for the Group 4 claimants. *Id*. ¶ 131-33. On July 26, Plaintiff's counsel asked the AAA about the status of payment for the ***Group 4*** claimants, and the AAA responded that it was in the process of collecting Lyft's fees for Group 4 and would begin the appointment process when those fees were paid. *Id*. ¶ 134, Ex. N. Notably, the claimants in Group 4 had not yet paid their initial filing fees for these demands at this time. *Id*. Ex. S. The AAA made no comment on any other outstanding fees. *See id*. ¶ 134, Ex. N. During this time, the AAA also continued to schedule preliminary conference dates from claimants in Group 2 and continued to communicate with the parties regarding the arbitrators for Group 3, including replacing arbitrators who had declined appointment. *Id*. ¶ 135-39. No further communication came from either the AAA or Plaintiff's counsel regarding payment of the Group 3 fees, or fees specifically for Brunner's claims, prior to the filing of this complaint. *See generally id*. ¶ 137-43.

   **D.**  **Brunner suddenly, and without prior warning, withdraws his arbitration claims in an *ex parte* communication to the AAA.**

On August 14, 2019, Brunner filed the class-action complaint in this case, alleging in part that Lyft defaulted in arbitration by failing to pay the initial case management fee for his demand and that Lyft had therefore waived its right to compel Brunner to arbitrate his claims. Compl. ¶

23.    The same day that Brunner filed the complaint, Plaintiff's counsel emailed the AAA to withdraw Brunner's claims and did not copy defense counsel. Bertoldi Decl. ¶ 142, Ex. P. Plaintiff's counsel did not discuss Brunner's intent to withdraw his claims before contacting the AAA, nor did Plaintiff's counsel—who had been in contact with defense counsel almost daily for months—ever provide any notice to Lyft that it would seek judicial relief if Lyft did not pay the initial case management fee for Brunner. *Id.* ¶ 141; *see generally id.*, ¶¶ 14-140. Plaintiff's counsel also did not ask Lyft's counsel to accept service of the complaint and did not give any notice to Lyft's counsel regarding the filing. *Id.* ¶ 141.

On August 15, 2019, Lyft's counsel received an email from the AAA, which included a reply to Plaintiff's email from the day before providing notice of Brunner's decision to withdraw his arbitration demand. *Id.* ¶ 142. The AAA reminded Plaintiff's counsel to include all parties on correspondence to the AAA and asked Lyft to respond to the withdrawal by August 19, 2019. *Id.*

That same day, Lyft's counsel called the AAA to explain that she was still waiting for the AAA to send an updated invoice for fees for Groups 3-5, in accordance with her request and discussion with the AAA on June 25, 2019. *Id.* ¶ 143. Counsel asked the AAA to confirm that Lyft was not past due in paying fees for Group 3, including Brunner's demand. *Id.* The AAA administrator, who had only taken over the administration of the Lyft arbitrations weeks before, stated that he needed to investigate the matter further but agreed that it appeared that the AAA had failed to issue a new invoice, likely because the claims were transferred from one administrator to another. *Id.* The AAA administrator also stated that he believed the fees for Group 3 were not yet due, because the AAA was still in the process of scheduling arbitrator conferences for ***Group 2***. *Id.* The AAA administrator asked Lyft to respond Plaintiff's counsel's August 14th email while he looked into the matter. *Id.*

On August 19, 2019, Lyft's counsel provided a written explanation for why the fees in the Brunner matter had not been paid; specifically, that the AAA had advised Lyft's counsel that no fees were past due and that it would soon send an updated invoice for Group 3 fees and any

other outstanding fees. *Id.* ¶ 144. On August 20, 2019, Plaintiff's counsel responded and maintained her assertion that Lyft's conduct was inconsistent with its intent to arbitrate Brunner's claim. *Id.* ¶ 146. This, despite the fact that Lyft had negotiated with Plaintiff's counsel on arbitrators for Brunner and all the other claimants in Group 3, and that the AAA had just begun to administer the Group 2 claims. *Id.* ¶ 143. Plaintiff's counsel did not withdraw the claims of any other Group 3 claimant.

On August 21, 2019, the AAA administrator responded that the fees at issue were not past due:

> The AAA has been actively administering groups 1 and 2 and had not proceeded with administration on groups 3, 4 and 5. The AAA had not received any communication from counsel for either party regarding the administration of Mr. Brunner's claim, between Claimant's [sic] request to recirculate the invoice and Ms. Chao's phone call and email on August 13 and 14, 2019. Thus, we had not circulated an invoice for Respondent's portion of the fees for group 3, which includes Mr. Brunner's claim.

*Id.* ¶ 147, Ex. S. The AAA administrator also explained the AAA had billed the Group 4 and 5 claimants for their initial filing fees when the cases were transferred to him, and that it was the AAA's intention to then bill Lyft for its outstanding fees once the claimants' initial fees were received. *Id.* The AAA administrator's email then confirmed that Claimants had paid their filing fees on August 16, two days *after* Brunner withdrew his claim and filed this lawsuit. *Id.*

The AAA separately emailed Lyft's counsel an invoice for Group 3, 4, and 5 case management fees on August 21, 2019, including the $1,900 fee for Brunner's claims, and those fees were promptly paid. *Id.* ¶ 150.

In the midst of these communications, Lyft also met and conferred with Plaintiff's counsel regarding the filing of this Complaint, arguing that the action was improper and premature. *Id.* ¶ 149, Ex. T. Plaintiff refused to dismiss the complaint and return to arbitration. *Id.* ¶ 149, Ex. U.

### III.   ARGUMENT

Under any analysis, Lyft has not relinquished its right to compel Brunner to arbitrate his claims. Lyft has at all times worked towards resolving Brunner's claim through arbitration, as it

9

has for all of the demands filed by Plaintiff's counsel.  Lyft never suggested that it does not intend to arbitrate Brunner's claims, nor has its conduct prejudiced Brunner's ability to proceed in arbitration.  Further, Lyft has not failed to perform its obligations under the arbitration agreement, nor has it attempted to stymie resolution of these claims in arbitration.  A finding of waiver or default is inappropriate here.

### A. Lyft has not waived its right to compel arbitration of Brunner's claims.

Courts considering whether a failure to pay arbitration fees relinquishes a party's right to compel arbitration have analyzed this question under the doctrines of both waiver and default.  *See Pre-Paid Legal Servs. Inc. v. Cahill*, 786 F.3d 1287, 1295 n.3 (10th Cir. 2015); *Sink v. Aden Enters, Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003); *Imagenetix, Inc. v. GNC Holdings, Inc.*, No. 12-CV-89-H (RBB), 2013 WL 12114630, at *5 (S.D. Cal. Jan. 28, 2013).  Regardless of which principle is cited, the result is usually the same.  *See Pre-Paid*, 786 F.3d at 1295 n.3; *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005); *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019) (default in § 3 of the FAA includes waiver).  Brunner alleges in his complaint both that "Lyft has defaulted in arbitration" and that Lyft has "waived its right to compel Plaintiff to proceed in that forum."  Compl. ¶ 23.  For purposes of this motion, Lyft applies the waiver framework but also addresses those cases considering default.

Waiver is the intentional relinquishment or abandonment of a known right.  *Newirth by and through Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019).  Under this standard, Brunner must show that (1) Lyft had knowledge of its existing right to compel arbitration; (2) Lyft acted inconsistently with that right; and (3) Brunner suffered prejudice as a result of Lyft's failure to pay the filing fees on a certain date.  *See Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002).  "Waiver of a contractual right to arbitration is not favored" and "any party arguing waiver of arbitration bears a heavy burden of proof." *Richards v. Ernst & Young, LLP*, 744 F.3d 1072, 1074 (9th Cir. 2013).

### 1. Lyft has not acted inconsistently with its right to compel arbitration.

There is no concrete test to determine whether a party has engaged in acts that are

inconsistent with its right to arbitrate. *Newirth*, 931 F.3d at 941. Rather, the court considers the totality of the party's actions. *Id.*; *Willick v. Napoli Bern Ripka & Assocs, LLP*, No. CV 15-00652-AB (Ex), 2015 WL 12765469, at *3 (C.D. Cal. Aug. 20, 2015).

Taking the relevant conduct here as a whole, the Court cannot reasonably conclude that Lyft acted inconsistently with its intent to arbitrate Brunner's claims. As described in detail above and in supporting Declaration of Candace Bertoldi, Lyft has been actively working towards the arbitration of Brunner's claim, along with all of the other 100+ claims filed by Plaintiff's counsel. Over a period of eleven months, Plaintiff's counsel filed five different groups of arbitration demands against Lyft, on behalf of 107 different claimants, including Brunner. Bertoldi Decl. ¶ 5 & Ex. A, ¶¶ 7-11. Since the date that Lyft received the first of these five demand letters, Lyft has, among other thing, (1) worked with Plaintiff's counsel to agree upon arbitrators and assign claimants to those arbitrators; (2) executed protective orders; (3) briefed the issue of whether to permit early summary judgment motions; (4) exchanged initial disclosures; (5) served and responded to written discovery, including expert discovery, (6) produced voluminous documents; (7) conducted claimant depositions; (8) conducted expert depositions; (9) argued the availability of third-party discovery; and (10) scheduled additional deadlines for expert discovery, dispositive motions, and hearings. *See id.* ¶¶ 14-151. Further, the parties have paid the fees for all claims in Groups 1-5. *Id.* ¶¶ 3, 6, 150.

At no point did Lyft suggest that it did ***not*** intend to arbitrate Brunner's claim, or that it did not intend to pay the arbitration fees of those claimants in Brunner's group, Group 3.[3] Thus, waiver for failure to pay fees is not appropriate where, as here, the party's conduct does not suggest any unwillingness to pay arbitral costs. *See Willick*, 2015 WL 12765469 at *4 (burden of demonstrating waiver not met where "the email exchanges between the parties do not suggest

---

[3] It is worth noting that the unpaid invoice at issue here was for the fees of all Group 3 claimants. Brunner does not explain what is distinct about Brunner's claims such that Plaintiff's counsel believes Lyft has waived its right to compel arbitration as to *him*, but not as to any of the remaining Group 3 claimants. Lyft intends to arbitrate Brunner's claim, and Brunner, like all other claimants in Group 3, has not suffered any prejudice by the way in which administration of his arbitration demand has proceeded.

any unwillingness to pay arbitral costs"). Any delay in Lyft's payment of the fees for Group 3 resulted from AAA administrative procedures or simple miscommunication. The record clearly demonstrates that the administration of the arbitration demands brought by Plaintiff's counsel was well underway, but that administration had not yet begun on Groups 3, 4, or 5, other than assigning case numbers after the parties presented claimant groupings and agreed arbitrator assignment to AAA. The record also demonstrates that Lyft made many attempts over a several-month period to ensure that a process was in place to receive and timely pay any unpaid invoices and any future invoices for arbitration fees, and that Lyft had been told that fees for Group 3 claimants would be due when an updated invoice for Groups 3-5 was circulated. The mere fact that Lyft did not immediately pay the arbitration fees for Brunner's claims is not sufficient on its own for a finding of waiver, particularly when Lyft has been actively engaged in the defense of all of the arbitration demands filed by Plaintiff's counsel. *See Imagenetix*, 2013 WL 12114630 at *5 (simple refusal to pay arbitration fees not sufficient for waiver where party had reasonable explanation for not doing so).

Further, Courts finding waiver for failure to pay fees usually rely on evidence that a party failed to pay fees despite multiple notices that it was responsible for the costs of arbitration and that the costs were due, and that the arbitrator entered an order finding the defendant in default or terminating the arbitration after a failure to pay. *See Frank v. Sirius XM Radio, Inc.*, No. SACV 12-00415-CJC (MLGx), 2012 WL 12897997, *3 (C.D. Cal. July 25, 2012) (citing *Sink*, 352 F.3d 1197); *Pre-Paid*, 786 F.3d at 1289 (finding waiver where the director of ADR Services at the AAA repeatedly warned defendant that if he did not pay, the proceedings would be suspended). The AAA's response in the wake of the withdrawal of Brunner's arbitration demands further supports the denial of any waiver argument. Notably, the AAA did not take the position that Lyft's fees in the Brunner case, or in any case, were past due, nor has the AAA made any statement to Lyft that it was in danger of default. Under these circumstances, the fact that Lyft had not yet paid the fees for Group 3 on August 14 does not rise to the level of acts inconsistent with its right to compel arbitration. *See Frank*, 2012 WL 12897997 at *3.

### 2. Brunner has not and will not suffer prejudice by having his claims compelled back to arbitration.

Even if Brunner could show that Lyft acted inconsistently with its right to arbitrate his claims (which he cannot), he has not demonstrated that he suffered any prejudice as a result. The conduct Brunner complains of has not in any way interfered with his ability to proceed in arbitration, and Brunner has not suffered any delay in the resolution of his claims as a result.

The first time it was suggested to Lyft that it might still owe fees on the February 27 invoice was June 14, 2019, when Mr. Weed emailed Ms. Bertoldi with another invoice. *See* Bertoldi Decl. ¶ 121 & Ex. H. The parties had reached agreement on the arbitrator assignments for Groups 2 and 3 (which included Brunner) only 9 days earlier. *Id.* ¶ 117 & Ex. G. And despite the fact that the Lyft had yet to pay these fees, Lyft still submitted these arbitrator assignments to the AAA. *Id.* Moreover, as of August 14, 2019, the AAA was still working with the Group 2 arbitrators to set preliminary conferences, so the Group 3 claimants were not far behind—both Groups 2 and 3 had arbitrators assigned, and Group 2 had only proceeded one step farther, to setting (and in some cases holding) preliminary conferences. *Id.* ¶¶ 135, 143. As of August 14, neither Lyft nor Plaintiff's counsel had taken any further steps even on the Group 2 arbitrations—no discovery, no briefing, no stipulations. *See id.* ¶¶ 135-43. Thus Brunner cannot point to any evidence that his claim would have proceeded more quickly if Lyft had paid the fees at some earlier date.

Further, even if this series of events did delay Brunner's claims, he did not suffer prejudice as a result. The very first arbitrations involving Plaintiff's counsel are set for hearing in November 2019. *Id.* ¶ 7. There has been no delay or prejudice to Brunner, who filed his demand months after these Group 1 claimants. Even if the Court considers the length of time from when Lyft first received an invoice for Group 3 claimants, Brunner cannot plausibly argue that he was prejudiced by, at most, a six-month gap in which the parties continued to meet and confer to plan arbitration of the claims and the AAA has been actively administering claims in all five Groups brought by Plaintiff's counsel.

Moreover, at no point did the AAA indicate to Lyft that it was past due on this invoice or

that its failure to pay would likely result in the AAA suspending or terminating the arbitration. Thus, this case looks nothing like those in which a court finds that a failure to pay fees constitutes waiver of the right to arbitrate. For example, in *Sink*, the defendant received multiple notices that the costs were due by a certain date and that it was responsible for payment; the defendant gave no indication as to its reason for failing to pay; the defendant did not make genuine efforts to arrange for payment; and the arbitrator entered an order of default. 352 F.3d at 1199. Here, by contrast, Lyft has made every effort to resolve the confusion regarding the outstanding invoice for the Group 3 claimants, and the AAA has never entered such an order.

Waiver based on failure to pay fees is thus not appropriate, because Lyft followed up on the arbitrator's requests and questions, and the AAA never triggered suspension or termination procedures for non-payment. *See McLellan v. FitBit, Inc.*, No. 3:16-cv-00036-JD, 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018). "[A] short delay in [the payment of filing fees] typically does not result in a material breach excusing the other side from its obligations." *Id*.

### B. The arbitration agreement is valid and enforceable and requires Brunner to arbitrate his claims on an individual basis.

Brunner concedes that he is subject to the arbitration clause in Lyft's Terms of Service. Compl. ¶ 14.[4] Arbitration agreements governed by the FAA are presumed valid and enforceable. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). This presumption reflects congressional intent to enact a "liberal federal policy favoring arbitration agreements." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Thus, the Court must enforce the arbitration agreement according to its terms by ordering Brunner to arbitrate his claims.

Further, when Brunner agreed to the Terms of Service, he waived his right to participate in a class action or in class arbitration. The Terms of Service specifically provide that

> YOU AND LYFT MAY EACH BRING CLAIMS IN ARBITRATION AGAINST THE OTHER **ONLY IN AN INDIVIDUAL CAPACITY AND NOT ON A CLASS, COLLECTIVE ACTION, OR REPRESENTATIVE BASIS ('CLASS ACTION WAIVER')**. YOU UNDERSTAND AND AGREE THAT YOU AND LYFT BOTH ARE WAIVING THE RIGHT TO PURSUE

---

[4] Brunner agreed to the arbitration provision in Lyft's February 6, 2018 Terms of Service on May 16, 2018. Ayanbule Decl. ¶ 14 & Ex. A; Lieu Decl. ¶ 6.

OR HAVE A DISPUTE RESOLVED AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING.

Lieu Decl., Ex. A § 17(b) (emphasis added).  Because this contract is governed by the FAA and thus presumed valid and enforceable under ordinary California contract principles, this contract provision should be upheld.  And the Supreme Court has held that class-action waivers, like the one present in Lyft's Terms of Service, are enforceable under the FAA.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018); *AT&T Mobility v. Concepcion*, 563 U.S. 333, 344-50 (2011); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468-71 (2015).  The FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify ***with whom*** the parties choose to arbitrate their disputes and ***the rules*** under which that arbitration will be conducted.'" *Epic Sys.*, 138 S. Ct. at 1621.  Any contrary result would fundamentally alter the nature of the arbitration to which Brunner and Lyft agreed.

## IV.   CONCLUSION

Brunner concedes that he agreed to arbitrate his claims against Lyft.  Lyft has at all times fully engaged in the arbitration of Brunner's claims, along with the many others filed by Plaintiff's counsel.  The Court should order Brunner to return to arbitration.

Dated:  September 12, 2019                                              KEKER, VAN NEST & PETERS LLP

By:  */s/ Jo W. Golub*
R. JAMES SLAUGHTER
JO W. GOLUB
MORGAN SHARMA
JASON GEORGE

Attorneys for Defendant
LYFT, INC.