Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Laura Iris Mattes (Cal. Bar No. 310594)
imattes@outtengolden.com
Adam Koshkin (Cal. Bar No. 320152)
akoshkin@outtengolden.com
OUTTEN & GOLDEN LLP
One California St., 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Rachel Bien (Cal. Bar No. 315886)
rmb@outtengolden.com
OUTTEN & GOLDEN LLP
601 S Figueroa St., Suite 4050
Los Angeles, CA 90017
Telephone: (323) 673-9900
Facsimile: (646) 509-2058

Katharine Chao (Cal. Bar No. 247571)
kathy@osclegal.com
Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert St., Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 658-7758

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| | Case No. 3:19-cv-04808-VC |
| D. BRUNNER, JR., | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLAIMS** |
| Plaintiff, | |
| v. | |
| LYFT, INC., | |
| Defendant. | Date:    November 14, 2019 |
| | Time:    10:00 a.m. |
| | Judge:   Hon. Vince Chhabria |
| | Room:    Courtroom 4 – 17th Floor |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................1

II.     FACTUAL BACKGROUND ................................................2

        A.      Mr. Brunner Initiated Arbitration In February 2019 And Promptly Paid
                His Share of Arbitration Fees......................................2

        B.      The AAA Invoiced Lyft in February 2019, But Lyft Ignored The Invoice.
                ........................................................................2

        C.      By April 2019, Lyft Was on Notice That It Had Not Paid the AAA's
                Fees. ................................................................3

        D.      During April and May 2019, Mr. Brunner Attempted to Move His
                Arbitration Forward. ...............................................3

        E.      In June 2019, the AAA Confirmed That Lyft Had Still Failed Fees. ........4

III.    LEGAL ARGUMENT ........................................................6

        A.      Lyft Defaulted By Failing To Pay Its Required Arbitration Fees.............6

        B.      Lyft Materially Breached The Arbitration Agreement. ...........................10

        C.      Lyft Also Waived Its Right To Compel Mr. Brunner To Arbitrate.........12

        1.      Lyft Acted Inconsistently With A Right to Arbitrate...............................12

        2.      Mr. Brunner Suffered Prejudice As A Result Of Lyft's Conduct............14

IV.     CONCLUSION ................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Dillard's, Inc.*,
430 F.3d 1004 (9th Cir. 2005)..........................................................................*Passim*

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008)................................................................................ 12

*Frank v. Sirius XM Radio, Inc.*,
2012 WL 12897997 (C.D. Cal. July 25, 2012) ...................................................... 14

*Freeman v. SmartPay Leasing, LLC*,
771 F. App'x 926 (11th Cir. 2019) ......................................................................... 12

*Garcia v. Mason Contract Prod., LLC*,
2010 WL 3259922 (S.D. Fla. Aug. 18, 2010)........................................................... 8

*Imagenetix, Inc. v. GNC Holdings, Inc.*,
2013 WL 12114630 (S.D. Cal. Jan. 28, 2013)........................................................ 13

*In Re Tyco Int'l Ltd. Sec. Litig.*,
422 F.3d 41 (1st Cir. 2005) .............................................................................. 12, 15

*Marie v. Allied Home Mortgage Corp.*,
402 F.3d 1 (1st Cir. 2005) ...................................................................................... 13

*McLellan v. Fitbit, Inc.*,
2018 WL 3549042 (N.D. Cal. July 24, 2018) .......................................................... 9

*Moncharsh v. Heily & Blase*,
3 Cal. 4th 1 (1992) ................................................................................................. 11

*Nadeau v. Equity Residential Properties Mgmt. Corp.*,
251 F. Supp. 3d 637 (S.D.N.Y. 2017).................................................................... 10

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*,
931 F.3d 935 (9th Cir. 2019).................................................................................. 12

*Nguyen v. Dental Sleep Masters, LLC*,
2018 WL 6265058 (C.D. Cal. Apr. 30, 2018) ....................................................... 15

*Pan Atl. Grp., Inc. v. Republic Ins. Co.*,
878 F. Supp. 630 (S.D.N.Y. 1995).......................................................................... 11

*Pre-Paid Legal Servs. Inc. v. Cahill*,
786 F.3d 1287 (10th Cir. 2015) .......................................................................... 9, 10

*Pry Corp. of Am. v. Leach*,
177 Cal. App. 2d 632, 2 Cal.Rptr. 425 (1960) ........................................................................ 10

*Quevedo v. Macy's Inc.*,
 798 F. Supp. 3d 1122, 1131 (C.D. Cal. 2011) (C.D. Cal. 2011) ............................................ 15

*Rapaport v. Soffer*,
2011 WL 1827147 (D. Nev. May 12, 2011) ............................................................................ 9

*Roach v. BM Motoring, LLC*,
228 N.J. 163, (2017) ................................................................................................................ 11

*Sink v. Aden Enterprises, Inc.*,
352 F.3d 1197 (9th Cir. 2003) ........................................................................................*Passim*

*Spano v. V & J Nat'l Enterprises, LLC*,
264 F. Supp. 3d 440 (W.D.N.Y. 2017) ............................................................................ 14, 15

*St. Agnes Medical Center v. PacifiCare of California*,
31 Cal. 4th 1187 (2003) .......................................................................................................... 15

*Stowell v. Toll Bros.*,
2007 WL 30316 (E.D. Pa. Jan. 4, 2007) ............................................................................ 7, 15

*Wagner Constr. Co. v. Pac. Mech. Corp.*,
41 Cal. 4th 19 (2007) .............................................................................................................. 12

*Willick v. Napoli Bern Ripka & Assocs., LLP*,
2015 WL 12765469 (C.D. Cal. Aug. 20, 2015) ...................................................................... 13

## Statutes

9 U.S.C. § 2 ............................................................................................................................ 10
9 U.S.C. § 3 .............................................................................................................................. 6
9 U.S.C. § 4 .............................................................................................................................. 6

PLAINTIFF'S OPPOSITION TO DEFENDANT LYFT, INC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS CLAIMS
Case No. 3:19-CV-04808-VC

## I.   **INTRODUCTION**

At what point does a company's failure to honor a contract deny its worker the benefit of the bargain and waive the company's option to enforce the contract?  Are there any protections against companies playing tricks in arbitration that undermine the Federal Arbitration Act ("FAA") and undermine the promise of speedy and efficient resolution of claims?

Plaintiff Donald Brunner, Jr. and defendant Lyft, Inc. ("Lyft") entered into a contract that Lyft seeks to enforce, requiring Mr. Brunner to waive his rights to trial by jury and instead pursue claims in Lyft's chosen forum, private arbitration.  One of the primary benefits of arbitration, its advocates argue, is that it is faster and more efficient than court proceedings.  This promise is at the center of federal jurisprudence regarding when individuals can be stripped of rights to proceed in court and forced to arbitrate their claims.  For example, the Ninth Circuit reasons that "[o]ne purpose of the FAA's liberal approach to arbitration is the efficient and expeditious resolution of claims."  *Sink v. Aden Enterprises, Inc*., 352 F.3d 1197, 1201 (9th Cir. 2003).

But in Mr. Brunner's situation, Lyft has used its arbitration contract to delay resolution of his claims.  Subject to an arbitration agreement that prevented him from asserting claims in court and required him instead to sue in arbitration on an individual basis, Mr. Brunner duly filed his claims before the American Arbitration Association ("AAA"), as required under the agreement. He paid his filing fees, as required under the agreement.  Then Lyft simply refused to pay its share of the arbitration fees for six months, ignoring the AAA's repeated requests to pay.  This prevented arbitration from getting under way, because only after the defendant pays its fees can an arbitrator be appointed (one of many differences between private arbitration and the public court system).

Why would Lyft delay so flagrantly?  Because delay would at worst postpone Lyft's obligation to pay Mr. Brunner under California law, and at best it would give Lyft an opportunity to lobby for a change in the legal standard and escape liability.  While Lyft was creating delay of Mr. Brunner's arbitration, it was furiously lobbying the state Legislature and governor to change the law so that it would not have to provide Mr. Brunner and other drivers with minimum pay, decent hours, and health and safety protections.  Lyft even wrote to the drivers to encourage them

to pressure political representatives not to give them those protections. *See* Declaration of Katharine Chao ("Chao Decl."), Ex. A. Mr. Brunner concluded that Lyft's flouting of its contractual obligations constituted waiver of its right to arbitrate. So he filed this action in court – only after which Lyft decided to pay the fees, in an effort to defend against his assertion of waiver.

In short, Lyft's conduct in Mr. Brunner's arbitration frustrated the FAA's purpose of "efficient and expeditious resolution of claims" and denied Mr. Brunner the benefit of the bargain of their agreement. Lyft now characterizes its failure as mere administrative oversight. It simply did not notice the AAA's repeated requests for payment (but it did notice Mr. Brunner's lawsuit). But Lyft's refusal to play fair was not mere accident or negligence. By failing to pay its share of the AAA fees, Lyft has defaulted in arbitration and materially breached the arbitration agreement it forced on Mr. Brunner. Lyft's failure also establishes its waiver of the right to compel arbitration. Lyft's motion to compel Mr. Brunner to arbitration should be denied.

## II.   **FACTUAL BACKGROUND**

### A.   **Mr. Brunner Initiated Arbitration In February 2019 And Promptly Paid His Share of Arbitration Fees.**

When Mr. Brunner first signed up to drive for Lyft, Lyft required him to agree to its Terms of Service – including a dense, verbose arbitration agreement, impenetrable to any layperson – on a take-it-or-leave-it basis. Accordingly, Mr. Brunner filed his arbitration claim against Lyft with AAA on February 15, 2019, alleging that Lyft misclassified him as an independent contractor. Chao Decl., Ex. B (Arbitration Demand). On February 27, 2019, the AAA invoiced Mr. Brunner for filing fees, which he paid the next day, on February 28. Chao Decl. ¶ 5, Ex. C.

### B.   **The AAA Invoiced Lyft in February 2019, But Lyft Ignored The Invoice.**

The following timeline is taken from the Declaration of Lyft's counsel (Dkt. No. 19-7), which includes multiple communications not previously disclosed to Mr. Brunner.[1] On February

---

[1] The Declaration of Candace Bertoldi is rife with hearsay about what AAA representatives purportedly told Lyft. Without discovery, Mr. Brunner is unable to verify what really happened between the AAA and Lyft regarding payment of arbitration fees. On September 23, 2019 (while this motion was pending), Mr. Brunner asked the AAA (copying Lyft's counsel) for "the date that fees were paid (by each party) for each claimant" but the AAA refused to answer. According to the AAA, "[w]hile the parties are free to share this information with each other, the AAA does not

27, 2019 (the same time the AAA invoiced Mr. Brunner), the AAA sent Lyft an invoice for the arbitration fees associated with Mr. Brunner's arbitration that was due "upon receipt." Declaration of Candace Bertoldi ("Bertoldi Decl.") ¶ 101, Ex H at p. 10.[2] Lyft assumed "at the time that the invoice was then paid." *Id*. ¶ 102. Lyft provides no facts of what steps it took to pay the invoice.

## C. By April 2019, Lyft Was on Notice That It Had Not Paid the AAA's Fees.

For some reason, on April 16, 2019 (about six weeks after receiving the AAA's invoice) Lyft's counsel "asked [Jonathan Weed of AAA] to send all outstanding AAA invoices for fees owed by Lyft and any future invoices to myself and two others at my firm, to ensure timely payment of fees." *Id*. ¶ 105. Lyft's counsel further states that "I did this based on some anomalies in communications between the AAA and Lyft. Before that time, I had not heard anything from the AAA regarding non-payment of any invoices." *Id*. Lyft provides no detail about what the "anomalies" were, nor does it offer any explanation as to what precipitated the April 16 call. Lyft does not provide any correspondence with the AAA from the time that might help explain.[3]

On April 18, 2019, Lyft's counsel called the AAA about outstanding invoices and a procedure for the AAA to submit the invoices to Lyft. *Id*. ¶ 106. Lyft contends that "[t]he AAA did not at that time, in response to this request, send any communication related to the February 27, 2019 invoice." *Id*. But Lyft admits that as of April 18, 2019, it knew that it had *some* outstanding invoices from the AAA.

## D. During April and May 2019, Mr. Brunner Attempted to Move His Arbitration Forward.

On April 29, 2019, Rachel Bien of Outten & Golden LLP, counsel for Mr. Brunner, emailed Ms. Bertoldi to start the process of identifying arbitrators for the arbitrations of Mr. Brunner and other drivers. Ms. Bertoldi responded that she would discuss the matter with Lyft. Having heard nothing, on May 2, 2019, Ms. Bien followed up with Ms. Bertoldi by email. Again,

---

share the financial history of a party with opposing counsel." Chao Decl., Ex. G.
[2] Yet AAA actually gave Lyft better payment terms as "[t]he AAA sought payment by March 20, 2019." Bertoldi Decl. ¶ 101.
[3] For example, Ms. Bertoldi mentions she emailed the AAA on April 16, 2019 (presumably about invoicing), but the email is not provided. Bertoldi Decl. ¶ 106.

silence.  On May 6, 2019, Ms. Bien wrote to Ms. Bertoldi "Candace, We need to move these forward.  Please get back to me today."  *See* Chao Decl., Ex. D.  Still having heard nothing, Ms. Bien had no choice but to email the AAA on May 7, 2019 asking that it begin the process of randomly assigning arbitrators from their National Roster.  *Id*., Ex. E.

On May 8, 2019 Lyft's counsel finally responded with a proposal to begin selection of arbitrators.  *Id.*, Ex. D.  The parties thereafter met and conferred on selection of arbitrators.  By June 5, 2019, the parties notified the AAA that they had agreed on arbitrator assignments, including assigning Judge Meisinger to Mr. Brunner's claims.  Bertoldi Decl. ¶ 117, Ex. G.

### E.  In June 2019, the AAA Confirmed That Lyft Had Still Failed Fees.

On June 10, 2019, having heard nothing, Iris Mattes of Outten & Golden LLP emailed Mr. Weed, the AAA case administrator, to "[p]lease confirm the status of AAA's invoices and appointment of the arbitrators" for the arbitrations of Mr. Brunner and other drivers.  On June 14, 2019, Mr. Weed replied that arbitration fees had not yet been received for a subset of the arbitrations, including Mr. Brunner's, and furnished Ms. Mattes with a copy of the AAA's February 27, 2019 invoice to Mr. Brunner for arbitration fees.  On June 18, 2019, Ms. Mattes reminded Mr. Weed that "[t]his invoice was paid [by Mr. Brunner] and the attached check was cashed on March 14, 2019. Please confirm that AAA will appoint all selected arbitrators and provide their availability for initial conference calls."  On June 19, 2019, Mr. Weed confirmed that Mr. Brunner had already paid his fees but that the AAA had "yet to receive payment from Lyft to cover its share of the fees for these matters.  We will proceed with arbitrator appointment upon receipt of their payment."  In response that day, Ms. Bien emailed Mr. Weed, "Can you please remind them that they owe their fees, cc'ing all parties?"  *See* Chao Decl., Ex. F.

Six days later, on June 25, 2019, Mr. Weed finally wrote to Lyft "that we are currently awaiting payment in the amount of $43,700.00 from Lyft in order to move forward with" the arbitrations of Mr. Brunner and other drivers.  Bertoldi Decl., Ex. J at p. 2 (PACER pagination).  Ms. Bertoldi replied to Mr. Weed, "I had emailed you about this invoice. Can you please let me know when you are available to discuss tomorrow."  *Id.*  Having heard nothing, on June 28, 2019

Ms. Bien emailed Bryan Corbett, the AAA case administrator who had taken over for Mr. Weed, asking "[c]an you or Lyft please let us know whether these fees have now been paid?"  Bertoldi Decl., Ex. K at p. 2 (PACER pagination).  By now, *over three weeks* had passed since the parties had furnished agreed-upon arbitrator names to the AAA.  Mr. Corbett replied the same day that "[y]es we have received the fees and applied payment to each of the cases. We will go ahead and proceed with inviting the arbitrators to serve." *Id.*

Yet a little over one week later, on July 8, 2019, Mr. Corbett notified all parties that Mr. Brunner's arbitration was one of "the cases in which we have received the Claimants' portion of the filing fees, but have not received the Respondent's portion of the filing fees, which totals $43,700 (23 cases x $1,900 per case). Once we receive Respondent's fees, we will proceed with arbitrator appointment." *Id.*, Ex. M at p. 2 (PACER pagination).  According to its counsel, Lyft's response was to do nothing even though Ms. Bertoldi "believed that the outstanding fees Mr. Corbett referred to in his July 8 email were the same ones of [sic] the February 27 invoice." *Id.* ¶ 130.  Lyft took no action "[b]ecause Mr. Weed had indicated that the AAA would send a new invoice for those fees, with an updated payment deadline" and so Lyft "continued to wait for such invoice before attempting to make payment for those fees." *Id.*  No explanation (or evidence) is offered as to why the AAA was in the process of sending Lyft *a new invoice* if the AAA had already sent one previously to Lyft on February 27.  Nor is there any explanation about why the AAA was apparently so willing to overlook Lyft's persistent failure to pay the invoice, or to generate a new invoice when one already existed.

On August 13, 2019, Mr. Brunner's counsel spoke with the AAA to determine whether Lyft had  paid the fees for Mr. Brunner's arbitration.  The AAA confirmed that Lyft still had not paid the fees despite recent communications between Lyft and the AAA regarding the amounts due.  The AAA representative informed Mr. Brunner's counsel that it had previously engaged in discussions with Lyft about a "draw down" account, but that Lyft had not committed to such a course.  The AAA representative further stated that given Lyft's lack of response, the AAA would resume ordinary collection efforts for the fees.  *See* Chao Decl. ¶ 9.

Given Lyft's failure to pay its share of fees and no imminent prospect of his arbitration commencing, Mr. Brunner withdrew his arbitration demand on August 14, 2019 and commenced this action the same day.

### III.   LEGAL ARGUMENT

Under Section 3 of the FAA, a district court may stay proceedings and compel arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration" that is instead brought in court so long as the party seeking to compel arbitration "is not in default in proceeding with such arbitration."  9 U.S.C. § 3.  Additionally, under Section 4 of the FAA, a district court may issue an order directing that an arbitration proceed in accordance with a written agreement to arbitrate.  9 U.S.C. § 4.  However, "a party to an arbitration agreement may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3."  *Sink*, 352 F.3d at 1201.

Lyft's conduct before the AAA establishes (1) Lyft's default in arbitration, (2) Lyft's material breach of the arbitration agreement under traditional state-law contract principles, and (3) Lyft's waiver of its right to compel Mr. Brunner's claims to arbitration.

### A.   Lyft Defaulted By Failing To Pay Its Required Arbitration Fees.

The Ninth Circuit has held that a party who fails to timely pay arbitration fees is "in default" of the arbitration proceeding for purposes of the FAA's Section 3.  *Sink*, 352 F.3d. at 1201.  Here, the Court should follow *Sink* and find Lyft in default.

In *Sink*, an employee sued his employer in district court alleging breach of an employment agreement.  The employer successfully compelled arbitration on the ground that the employment agreement contained an arbitration clause, and on March 19, 2001, the district court stayed the action and referred the matter to arbitration.  *Id*. at 1198.  The parties then agreed to arbitrate with USA & M and scheduled arbitration for August 20-21, 2001.  The employer, however, failed to pre-pay the costs of arbitration (which it was solely obligated to pay) by the August 6, 2001 payment deadline.  The day after the deadline, the employee wrote to USA & M "indicating that

Sink would seek a default award if Aden did not pay the required feed by August 20, 2001, the date on which the arbitration had been scheduled to commence." *Id.* at 1199.  On August 17, 2001, USA & M cancelled the arbitration due to the employer's non-payment of fees. *Id.*  The employee then moved the district court to lift the stay and sought entry of default judgment. During a hearing on the employee's motion, the employer informed the district court that it had obtained the money needed to pay the costs of arbitration, and requested that the district court refer the matter back to arbitration.  The court denied the employee's request for default judgment and denied the employer's motion to compel arbitration on the ground that the employer was in default of the arbitration proceeding. *Id.*

The Ninth Circuit affirmed.  Whether a party defaults in arbitration is a question of fact subject to clear-error review. *Id.* at 1199.  In *Sink*, the following facts established default:

- the contract required the employer to pay the costs of arbitration by August 6, 2001;
- the employer had received multiple notices of this deadline;
- the employer knew it was responsible for this payment;
- the employer failed to pay the costs by the deadline;
- the employer gave no prior notice that it would be unable to pay;
- the employer presented no evidence that it had "made genuine efforts" at alternative payment arrangements at the time the arbitration costs were due;
- the employee waited until two weeks after the payment deadline to move the arbitrator for default, at which time the employer had still not made arrangements to pay; and
- the arbitrator entered an order finding the employer to be in default.

*Id.*  On these facts, the district court's conclusion that the employer had defaulted in arbitration was not clearly erroneous. *Id.* at 1199-1200 (citing Black's Law Dictionary definition of "default" as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due."); *see also Stowell v. Toll Bros.*, No. 06 CV 2103, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007) (citing *Sink* and holding that "Defendant's admission that the filing fee was not paid is sufficient for the court to conclude that Defendant defaulted . . . since Defendant's default in the arbitration proceeding by failing to file the required fee would preclude the court from staying proceedings under Section 3 . . . Section 4 cannot require the court to compel arbitration."). [4]

---

[4] *Sink* engaged in no analysis of whether the employer had waived its right to arbitrate.  Its holding rested solely on the employer's "default" under the FAA's Section 3. *Sink*, 352 F.3d at

This Court should, as in *Sink*, find that the facts here establish Lyft's default. Between February 15, 2019 (when Mr. Brunner filed his arbitration demand) and August 14, 2019 (when he withdrew his demand after Lyft's default), Lyft was notified at least four times that it owed fees for Mr. Brunner's arbitration, on February 27, 2019, in April 2019,[5] in June 2019, and again in July 2019. Bertoldi Decl. ¶¶ 101, 105, 106, 121, 123, 128, 129. Furthermore, Lyft was always aware of its obligation to pay the AAA the initiation fees necessary for an arbitrator to be appointed. While Lyft contends that the fees were not yet due, it is not disputed that the arbitrations of Mr. Brunner (and the 22 other drivers) could not proceed until the fees were paid – resulting in a prejudicial delay of their claims.

Furthermore, Lyft's contention that fees were not yet due is contradicted by the record.[6] The AAA's invoice to Lyft is dated February 27, 2019 and states it is due "upon receipt." *Id.*, Ex. H at p. 10. Lyft admits it received this invoice on that date, and there is no other invoice in the record. *Id.* ¶ 101. Lyft then attempted to rectify its default by remitting the fees it owed to the AAA, but only a week after Mr. Brunner filed this lawsuit. *Id.* ¶ 150. This "intentional and/or reckless" chain of events supports finding Lyft defaulted. *Garcia v. Mason Contract Prod., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *4 (S.D. Fla. Aug. 18, 2010) (observing that defendant's "default was not simply a bureaucratic error; it was instead an intentional and/or reckless act because the AAA provided repeated notices to the Defendant that timely payment of the fee had not been received. Not taking that seriously, Defendant did not try and cure that default until after the AAA closed its case. By that point, however, the AAA—exercising the rules that these parties agreed to abide by—refused to reopen the case. There is no other description the

---

1202 n.3 ("Aden also claims that the district court erred in determining that Aden waived its contractual right to arbitrate. Because we affirm the district court in light of our interpretation of the FAA, we need not decide the issue of waiver.").

[5] Lyft's counsel suggests Lyft was reminded of overdue fees in April 2019. Bertoldi Decl. ¶ 105.

[6] The record suggests that the AAA is granting Lyft preferential payment terms, compared to Lyft drivers like Mr. Brunner, by not enforcing the term that its invoices to Lyft are due "upon receipt." At no time has the AAA informed Mr. Brunner's counsel that payment is due any later than "upon receipt."

Court can find for this self-created situation other than 'default.'").

Unlike in *Sink*, Mr. Brunner could not even obtain an order of default from the arbitrator because Lyft's refusal to pay fees prevented an arbitrator from being appointed.  In this sense, Lyft's default is even more consequential than the default finding affirmed in *Sink* because Lyft rendered Mr. Brunner powerless to obtain relief of any kind in arbitration.[7]

In *McLellan v. Fitbit, Inc*., No. 3:16-CV-00036-JD, 2018 WL 3549042 (N.D. Cal. July 24, 2018), cited by Lyft, Judge Donato recognized that "[w]hen a party to an arbitration agreement is sued, it will lose the right to compel arbitration" under doctrines of default or breach "if it fails to pay the arbitrator's fees or otherwise participate in the arbitration." *Id.* at *1.  Judge Donato declined to find default or breach, however, because "no more than a few weeks passed between the initial fee deadline and Fitbit's actual payment, and AAA never suspended or terminated the proceedings." *Id*. at *5.  The situation here is vastly different.  Lyft permitted *six months* to pass without paying arbitration fees it knew were due "upon receipt" as of February 27, 2019.  Lyft's dilatory conduct meant Mr. Brunner could not even ask for a formal finding of default because no arbitrator had been appointed.  Regardless, "the absence of a formal finding of default by the arbitrators does not preclude the district court from making" the "determination under § 3" of default for failure to pay arbitraton fees. *Pre-Paid Legal Servs*. *Inc. v. Cahill*, 786 F.3d 1287, 1298 (10th Cir. 2015); *see also Rapaport v. Soffer*, No. 2:10-CV-00935-KJD, 2011 WL 1827147, at *2 (D. Nev. May 12, 2011) ("Soffer may be correct that none of the evidence indicates that the arbitrator had formally entered an order of default against him due to his inability to pay the arbitration fees.  However, the Ninth Circuit has consistently found that the failure by a party to pay fees in arbitration will prevent that party from successfully moving to compel arbitration in the same case in the future. . . . Lack of a formal ruling of default from the arbitrator does not change this reality.").

In short, Lyft has defaulted under the arbitration agreement.  Lyft is therefore foreclosed by

---

[7]   *See Brown v. Dillard's, Inc*., 430 F.3d 1004, 1013 (9th Cir. 2005) (noting that the AAA "could not compel Dillard's to pay its share of the filing fee, and in the absence of the fee it could not proceed.").

FAA Section 3 from moving to compel arbitration of Mr. Brunner's claims.

### B.  Lyft Materially Breached The Arbitration Agreement.

There is an alternative basis to deny Lyft's Motion.  Mr. Brunner is also excused from arbitrating his claims because Lyft materially breached the arbitration agreement by failing to adequately participate in the arbitral forum.

In *Brown*, the Ninth Circuit held "that when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration" and that a party cannot compel arbitration under an agreement "of which it is itself in material breach."  *Brown*, 43 F.3d at 1006.  The *Brown* court's holding rested on Section 2 of the FAA, which provides that arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or equity for the revocation of any contract." *Id*. at 1010 (quoting 9 U.S.C. § 2).  "A bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" *Id.* (quoting *Pry Corp. of Am. v. Leach*, 177 Cal. App. 2d 632, 2 Cal.Rptr. 425, 429–30 (1960)).  This state-law principle is "a defense that would be available to a party seeking to avoid the enforcement of any contract."  *Id.* at 1010.

Similarly, in *Pre-Paid Legal Servs.*, the Tenth Circuit, relying on *Brown* and *Sink*, held that a defendant "breached the arbitration agreement by failing to pay his fees in accordance with AAA rules and was not entitled to maintain the stay under § 3" of the FAA.  *Pre-Paid Legal Servs.*, 786 F.3d at 1294.  And in *Nadeau v. Equity Residential Properties Mgmt. Corp.*, 251 F. Supp. 3d 637 (S.D.N.Y. 2017), the defendant-employer failed to pay arbitration fees and the AAA administratively closed the file.  *Id*. at 640.  The *Nadeau* court found that the defendant "materially breached the Arbitration Agreement and therefore cannot use the Agreement to compel arbitration" when it refused to arbitrate before the AAA because "[u]nder New York law, when a party to a contract materially breaches that contract, it cannot then enforce that contract against a non-breaching party."  *Id*. at 641.

The same contract law rules apply here. Lyft cannot compel Mr. Brunner "to honor an arbitration agreement of which it is itself in material breach." *Brown*, 430 F.3d at 1006. The facts supporting default, *supra*, also show that Lyft materially breached the arbitration agreement. Lyft prevented performance of the arbitration agreement when it knew that it owed the AAA fees for Mr. Brunner's arbitration, knew that Mr. Brunner's arbitration could not proceed until such fees were paid, and yet willingly allowed six months to lapse without taking the necessary steps to pay the fees.

Lyft may argue that its post-hoc payment of fees means that any breach is cured and Mr. Brunner should be ordered to proceed with arbitration. But Lyft's dilatory conduct has already deprived Mr. Brunner of a competent and efficient forum for resolution of his claims. Lyft's Terms of Service require Mr. Brunner to use the AAA. Mr. Brunner had no say in the choice of arbitration provider. The AAA has been ineffective in obtaining timely payment from Lyft so that Mr. Brunner's arbitration can proceed. Thus, Lyft's unilateral choice of forum has denied Mr. Brunner the benefit of his bargain for a purported "efficient and expeditious resolution of claims" in arbitration. *Sink*, 352 F.3d at 1201; *see also Pan Atl. Grp., Inc. v. Republic Ins. Co.*, 878 F. Supp. 630, 640 (S.D.N.Y. 1995). Having failed to receive the benefit of his bargain to a competent and efficient forum for resolving claims, Mr. Brunner is therefore excused from arbitrating his claims. *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 10 (1992) ("Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. . . . By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain.").

Moreover, adopting a rule that permits delay so long as the breaching party establishes a cold record that "the check is in the mail" would "allow a party refusing to cooperate with arbitration to indefinitely postpone litigation." *Sink*, 352 F.3d at 1201. This is not the law. *See Roach v. BM Motoring, LLC*, 228 N.J. 163, 179–80, (2017) ("The benefit expected under an arbitration agreement is the ability to arbitrate claims. A failure to advance required fees that

- 11 -

PLAINTIFF'S OPPOSITION TO DEFENDANT LYFT, INC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS CLAIMS
Case No. 3:19-CV-04808-VC

results in the dismissal of the arbitration claim deprives a party of the benefit of the agreement. Therefore, the failure to advance fees goes to the essence of the DRA and amounts to a material breach.") (internal quotations omitted).  The Court should find that Lyft materially breached the arbitration agreement when it failed for six months to pay arbitration fees that it knew were owed .

### C.  Lyft Also Waived Its Right To Compel Mr. Brunner To Arbitrate.

Finally, the Court should also deny the Motion on the ground that Lyft waived its right to compel arbitration.  Because "waiver is an equitable doctrine[,]" this Court "can apply it to redress injustice in situations where technical requirements prevent the court from otherwise providing adequate legal remedies." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125 (9th Cir. 2008) (internal citations omitted).  This is because asking a court to compel arbitration is essentially "a suit in equity to compel specific performance of [the arbitration agreement]." *Id.* (brackets in original, quoting *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19 (2007)).

To establish waiver, Mr. Brunner must prove "(1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; and (3) prejudice to the person opposing arbitration from such inconsistent acts." *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019). "[T]he totality of the parties' actions" is relevant. *Id.* at 941.  "Waivers of arbitral rights need not be express, but may be implied from the particular circumstances." *In Re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005).

### 1.  Lyft Acted Inconsistently With A Right to Arbitrate. [8]

The same facts showing Lyft's default and material breach also show that Lyft acted inconsistently with its right to arbitrate.  One of Lyft's cited cases, *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926 (11th Cir. 2019), actually *supports* this conclusion.  Lyft Br. at 10.  In *Freeman*, the Eleventh Circuit affirmed the district court's finding of waiver because the defendant "SmartPay acted inconsistently with its contractual right to arbitrate when it refused to pay the initial filing fee, as expressly required by the arbitration agreement . . . SmartPay therefore waived

---

[8] It is undisputed that Lyft knew at all relevant times that the claims between it and Mr. Brunner were arbitrable.

its right to arbitration by failing to pay arbitration fees." *Id.* at 933 (internal citation omitted).

Lyft's failure to pay the fees also created undue delay in commencing Mr. Brunner's arbitration,

and "undue delay in bringing arbitration . . . is inconsistent with the desire to arbitrate." *Marie v.*

*Allied Home Mortgage Corp.*, 402 F.3d 1, 15 (1st Cir. 2005).[9]

Lyft relies on *Imagenetix, Inc. v. GNC Holdings, Inc*., No. 12-CV-89-H (RBB), 2013 WL

12114630 (S.D. Cal. Jan. 28, 2013) for the proposition that failure to pay arbitration fees is

insufficient to establish waiver when there is a reasonable explanation for doing so. Lyft Br. at 12.

But *Imagenetix* is inapposite. In *Imagenetix*, a party to an active arbitration refused to pay any

further arbitration fees, then filed for Chapter 11 bankruptcy. *Id*. at *2. The court declined to find

that the bankrupt party acted inconsistently with a right to compel arbitration because "Imagenetix

has presented evidence showing that it failed to make the payments due to financial difficulties"

caused by a multi-million dollar judgment. *Id*. at *5. Lyft makes no comparable claim here.[10]

Lyft also argues that waiver is usually found when "the arbitrator entered an order finding

the defendant in default or terminating the arbitration after a failure to pay." Lyft Br. at 12. But

courts have rejected this argument because of the risk that it creates a "perverse incentive" for a

party to continually and unilaterally postpone payment of arbitration fees – and other prerequisites

to reaching the merits – so long as the party can create a paper trail filled with false promises to

pay. *Brown*, 430 F.3d at 1012 ("Employers like Dillard's would have an incentive to refuse to

arbitrate claims brought by employees in the hope that the frustrated employees would simply

---

[9] Lyft touts its litigation activity in *other* arbitrations in support of its argument that Lyft has acted consistently with its intent to arbitrate *Mr. Brunner's* claims. *See, e.g.*, Bertoldi Decl. ¶¶ 14-104; Lyft Br. at 12. This argument makes no sense, and obviously fails to account for how Lyft treated *Mr. Brunner*, which is a query of Lyft's own making. Lyft's Terms of Service ban class and collective actions and forces drivers to submit to individualized arbitration proceedings. *See* Declaration of Jennie Lieu, Ex. A at p. 11 of 23 (Dkt. No. 19-2, PACER Pagination). Lyft cannot now point to how it treated other drivers in support of how it is treating Mr. Brunner. The pertinent question is whether Lyft waived its right to arbitrate *Mr. Brunner's* claims.

[10] Lyft cites *Willick v. Napoli Bern Ripka & Assocs., LLP*, No. CV 15-00652-AB (EX), 2015 WL 12765469 (C.D. Cal. Aug. 20, 2015), in support of its argument that it acted consistently with a right to arbitrate because Lyft never suggested "any unwillingness to pay arbitral costs" Lyft Br. at 11. This argument is belied by Lyft's pattern of effectively ignoring the AAA's invoices. Moreover, *Willick* is inapplicable. In *Willick*, the district court rejected the plaintiff's argument that the defendants had acted inconsistently with a right to arbitrate simply because they refused plaintiff's informal proposal to divide arbitration fees in the plaintiff's preferred manner. *Id.* at *4. Here, there is no dispute over how much each side owes.

abandon them."). Here, the Court must not sanction the same perverse incentive.[11]

Lyft next argues that it acted consistently with its intent to arbitrate because it was purported working with the AAA on "process improvements." *See* Lyft Br. at 12; Bertoldi Decl. ¶ 106. Similar arguments about invoicing errors were rejected in *Spano v. V & J Nat'l Enterprises, LLC*, 264 F. Supp. 3d 440 (W.D.N.Y. 2017). In *Spano*, the defaulting party argued it should be excused from waiver due to administrative errors made by the AAA. *Id*. at 455-56. The Court found waiver regardless, observing that the AAA's errors "will not excuse Defendants' participation in the arbitration proceeding." *Id*. at 456. The *Spano* court found a two-month delay in payment (much shorter than the delay here) sufficient to establish waiver. *Id.* at 456 n.4. Here, the record is devoid of competent facts supporting Lyft's arguments that it was taking any effective steps to pay invoices, as opposed to allowing administrative issues to languish. Instead, the record establishes that the AAA continuously notified Lyft that fees were due and that Lyft never paid the fees. If anything, the record establishes that Mr. Brunner's filing of this lawsuit was the impetus for Lyft to discharge its responsibility, not only to Mr. Brunner but to scores of other drivers.

### 2. Mr. Brunner Suffered Prejudice As A Result Of Lyft's Conduct.

Mr. Brunner has been prejudiced by Lyft's waiver. Mr. Brunner experienced a lengthy six-month delay of his right to arbitrate. He could not even have an arbitrator appointed because of Lyft's failure to pay the AAA's fees. Mr. Brunner has also incurred costs and attorney's fees in pursuing a failed arbitration proceeding and now this court action. These forms of prejudice were similar to those suffered by the employee in *Brown*, where the Ninth Circuit had "no trouble concluding that the delay and costs incurred by Brown" who only sued in court "as a last resort" after the employer "rebuffed" her efforts to arbitrate, "are prejudicial for the purpose of waiver

---

[11] Lyft cites *Frank v. Sirius XM Radio, Inc.*, No. SACV1200415CJCMLGX, 2012 WL 12897997 (C.D. Cal. July 25, 2012) in support of its argument that no waiver occurred here because "the AAA did not take the position that Lyft's fees in the Brunner case, or in any case, were past due, nor has the AAA made any statement to Lyft that it was in danger of default." Lyft Br. at 12. But whether the invoice was past due or not is not conclusively established on this record, especially given the fact that the AAA's February 27, 2019 invoice to Lyft plainly states it is due "upon receipt." *Frank* is also distinguishable because there, the plaintiffs failed to pay filing fees, not the defendant, and therefore the defendant could not have waived its arbitration rights. *Id.* at *3.

analysis." *Brown*, 430 F.3d at 1012-13; *see also Nguyen v. Dental Sleep Masters, LLC*, 2018 WL 6265058, at *10 (C.D. Cal. Apr. 30, 2018) ("As in *Brown*, Defendants' refusal to submit to arbitration upon Plaintiffs' request per the Arbitration Agreement caused delay and costs that were prejudicial including filing the instant lawsuit as a 'last resort' to seek adjudication of their rights."); *Stowell*, 2007 WL 30316, at *1 ("The court concludes that compelling arbitration after Defendant's [sic] prevented the arbitration from going forward by failing to remit the proper fee would prejudice Plaintiff, who, as a result of Defendant's failure, went forward with all of the administrative procedures required before filing a complaint in the District Court.").

Mr. Brunner has also suffered prejudice because Lyft's "conduct has substantially undermined th[e] important public policy [in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution]" and "substantially impaired" his "ability to take advantage of the benefits and efficiencies of arbitration." *Quevedo v. Macy's Inc.*, 798 F. Supp. 3d 1122, 1131 (C.D. Cal. 2011) (brackets in original) (quoting *St. Agnes Medical Center v. PacifiCare of California*, 31 Cal. 4th 1187, 1204 (2003)); *see also Spano*, 264 F. Supp. 3d at 457. Lyft's imposition of delay left Mr. Brunner powerless for six months to vindicate his rights. "Even as justice delayed may amount to justice denied, so it is with arbitration." *Tyco*, 422 F.3d at 46.[12]

## IV.   CONCLUSION

For all of the foregoing reasons, Mr. Brunner respectfully requests that the Court deny Lyft's Motion to Compel Individual Arbitration And Dismiss Claims in its entirety.

Dated: September 26, 2019                    Respectfully submitted,

                                             By: */s/ Katharine Chao*
                                                 Katharine Chao

                                             Counsel for Plaintiff and the Proposed Class
                                             [*add'l Plaintiff's Counsel on caption*]

---

[12] Lyft contends Mr. Brunner suffered no delay because the AAA had not yet commenced administration of his arbitration grouping, as the AAA was occupied with administering an earlier group of driver claims brought by Mr. Brunner's counsel.  Lyft Br. at 13; Bertoldi Decl. ¶ 148. This argument is meritless. The evidence shows that the AAA had already invoiced Lyft for the Group 3 claimants (*id.*, Ex. H at p. 10) and that the AAA had made clear it could not proceed with appointing arbitrators until Lyft paid its fees (*id.*, Ex. J at p. 2).  *See also* Chao Decl., Ex. F at p. 2.